NO. 4-06-0981          Filed 11/6/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| NEISHA E. COLLIER, | ) | No. 05CF386 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

Defendant, Neisha E. Collier, pleaded guilty to ob-structing justice (720 ILCS 5/31-4(a) (West 2006)), a Class 4 felony.  The State agreed to recommend no more than two years' imprisonment.  When Collier failed to attend her sentencing hearing, the trial court sentenced Collier to an extended term of four years' imprisonment.  Collier appeals, arguing that the trial court did not adequately admonish Collier of the conditions on its concurrence with the plea agreement.  We vacate Collier's sentence and remand with directions.

I. BACKGROUND

A. Underlying Offense

This case arises out of a minor vehicle collision involving Collier's boyfriend, Allen Davis, and Nancy Seward. Because the factual basis was exceptionally brief, we take our facts concerning the underlying offense from the police report.

Davis was driving a Lincoln Town Car with the permission of the owner, Moesha Hilson. Collier was the only passenger in the Lincoln Town Car. Seward had no passengers. Davis approached a stop sign. Davis was unable to stop the car due to snow and ice and collided with Nancy Seward's car. No one was injured. Davis, who had a suspended license, immediately fled the scene. Collier then called Moesha Hilson and asked Moesha to report the Lincoln Town Car stolen.

When the police arrived, Collier lied, telling them that she did not know the driver, but only knew his nickname to be "Lil T." Collier stated that "Lil T." had pulled up alongside her as she was walking to the convenience store and had agreed to give her a ride. Collier described "Lil T." as a 16-year-old black youth, when in fact Davis was 21. Collier told the police she did not know who owned the Lincoln Town Car.

While still at the scene of the accident, the police learned that Moesha Hilson had reported the Lincoln Town Car stolen. The police began to doubt Collier's truthfulness and told Collier that she could be sent to jail for obstructing justice. Collier continued to tell police she only knew the driver as "Lil T.," that she did not know Moesha Hilson, and that she had no reason to lie.

Moesha, however, soon told the police that Collier had asked Moesha to report the car stolen. The police decided to

give Collier one more chance to tell the truth, but Collier continued to deny knowing "Lil T." or Moesha. The police then arrested and handcuffed Collier. As the police placed Collier in the squad car, she told them Davis's true name, this time without prompting. However, Collier continued to deny knowing Moesha.

The information charging Collier stated that Collier, with the intent to obstruct the prosecution of Davis, knowingly furnished false information in that she told police that she only knew Davis as "Lil T." after Davis fled the scene of the accident on foot, at a time when Davis's driver's license was suspended. The information did not allege anything concerning the false stolen-vehicle report.

### B. The Plea Hearing

At the April 21, 2006, plea hearing, the trial court first informed Collier that the charged offense, obstructing justice, was a Class 4 felony, which typically carried a sentencing range of one to three years' imprisonment. However, due to Collier's criminal history, Collier was eligible for an extended sentence totaling six years' imprisonment. The following exchange then took place:

"THE COURT: Is your plea of guilty today voluntary? Is this of your own free will?

COLLIER: Yes, it is.

THE COURT: The agreements, please.

THE STATE: Judge, this is an open plea for later sentencing. The only agreement is the State would cap its recommendation at two years [in the] Department of Corrections.

THE COURT: [Defense counsel], is this the agreement?

DEFENSE COUNSEL: That's the agreement, Judge.

THE COURT: Miss Collier, as I understand the situation, we're going to continue this matter for a sentencing hearing, and at that sentencing hearing your penalty range will be anything from possibly some form of probation up to a maximum of two years in the Department of Corrections as opposed to some form of probation up to six years. <u>Your penalty range will be confined to probation up to two years</u>. Is that your understanding of where we are right now?

COLLIER: Yes, it is." (Emphasis added.)

After the State read the factual basis for the plea, which centered solely around Collier's denial of Davis's identity, the

- 4 -

court accepted Collier's guilty plea:

> "THE COURT:  Miss Collier, do you now then plead guilty to that charge of obstructing justice?
>
> COLLIER:  Yes.
>
> THE COURT:  Show the defendant pleads guilty to that charge.  That plea of guilty is accepted by the court.  Judgment is entered on the plea."

The trial court then proceeded to take care of some technical matters, such as ordering a Treatment Alternatives for Safer Communities (TASC) report and setting a date for the sentencing hearing, and the following exchange took place:

> "THE COURT:  All right.  We will continue this matter to Thursday, June 1 at 1:30 back in this courtroom.  Court services will prepare a presentence report ***.  [Defense counsel and State], is part of the plea agreement that the defendant appears for sentencing?
>
> DEFENSE COUNSEL:  Yes, Your Honor, it is.
>
> THE STATE:  Yes.
>
> THE COURT:  Miss Collier, what that

means is, you have to appear at your sentencing hearing on June 1. *** If you don't show up here June 1, then I will have that sentencing hearing without you, and we could go over the two[-]year cap.  There is no agreement if you don't show up, so it is very, very important that you show up for your sentencing hearing.  Again, if you don't show up, there is no agreement, and a sentencing hearing will be held without you."

Collier did not respond to the trial court's admonishment. Nothing further of substance was said by anyone and the plea hearing concluded.

### C. The Sentencing Hearing

Collier initially arrived to the courtroom for sentencing.  However, before the trial judge entered the courtroom, Collier left.  When the judge entered the courtroom, he immediately asked where Collier was.  Collier's attorney answered that Collier had been present but left the courtroom about three minutes prior to meet a family member who she believed would be testifying on her behalf.  The judge stated that he had warned Collier that she needed to be present and began the hearing without her.  According to Collier's subsequent explanation of the incident, before the judge entered the courtroom, Collier

- 6 -

learned that her father provided the State with aggravating evidence against her. Collier burst into tears and fled the courthouse. An hour and a half later, Collier called the police and told them she felt suicidal. Collier was hospitalized for the next 12 hours.

Back at the sentencing hearing, the State called police officer Rusty Wike. Wike testified that he investigated an incident wherein Collier stole a lawnmower from her father and sold it to a neighbor for $20. The State then called police officer Gregory Manzana. Manzana investigated a domestic incident involving Collier and Collier's 13-year-old daughter, A.C. A.C. told Manzana that Collier arrived at A.C.'s grandparents' home to steal some shoes. A.C. told Collier to leave. According to A.C., Collier then grabbed a telephone and attempted to hit A.C. on the head with it. Collier smothered A.C. with her body and injured A.C.'s arm in the struggle. Collier denied this. The police did not believe they had probable cause to arrest Collier for this incident because A.C. showed no sign of physical injury.

The State then requested a minimum of two years' imprisonment. The State noted that Collier's involvement with the criminal justice system went back 18 years and that Collier was not cooperative in the preparation of the presentence report, missing several appointments with the Court Services Department.

In turn, the defense counsel requested a more lenient, 18-month term.

The trial court acknowledged that a prison sentence was not necessary to protect the public and that Collier did not appear to be dangerous. However, the court felt that a lengthy sentence was necessary to further the ends of justice. Collier had 10 criminal convictions over the last 18 years. The court mentioned Collier's long-standing struggle with drug addiction and stated that Collier's convictions were in line with what a person might expect from a "junkie": property crimes, unlawful use of a weapon, aggravated battery (1989), resisting a peace officer, and possession with intent to deliver. The trial court then stated:

> "The court admonished the defendant that should she fail to appear for her sentencing hearing, the court <u>would</u> <u>not</u> <u>concur</u> with the State's cap, the court could sentence her to more than two years ***. I'm not sentencing her to any specific number of years in the Department of Corrections because she didn't show up; however, she sure did blow a good deal by not showing up." (Emphasis added.)

The trial court then sentenced Collier to four years' imprisonment. The trial court denied Collier's motion to reconsider.

- 8 -

This appeal followed.

## II. ANALYSIS

Collier argues that the trial court improperly added a condition to its concurrence with the plea agreement after it accepted the plea. We agree.

Plea agreements are to some extent governed by contract-law principles. People v. Evans, 174 Ill. 2d 320, 326, 673 N.E.2d 244, 247 (1996). Once counsel informs the trial court of the terms of the plea agreement and before the trial court accepts the plea, the court must (1) state its (a) concurrence with the plea agreement or (b) conditional concurrence with the plea agreement or (2) admonish the defendant that it is not bound by the terms of the plea agreement and that if the defendant persists in her plea, the disposition may be different from that contemplated by the plea agreement. 177 Ill. 2d Rs. 402(d)(2), (d)(3); see also People v. Rossman, 309 Ill. App. 3d 662, 668, 722 N.E.2d 1216, 1222 (2000) (regarding trial court's role in concurring or conditionally concurring); People v. Butcher, 288 Ill. App. 3d 120, 124, 679 N.E.2d 1260, 1263 (1997) (regarding trial court's role in admonishing the defendant that it is not bound by the terms of the plea agreement). If the trial court opts to conditionally concur with the terms of the plea agreement and reserves unto itself various sentencing options, the court must specifically state on the record those options that it

- 9 -

intends to reserve and ascertain on the record that the defendant understands the limits of the concurrence, and every sentencing option thereby reserved, prior to the entry of the guilty plea. People v. Culp, 127 Ill. App. 3d 916, 926-27, 468 N.E.2d 1328, 1335 (1984); Rossman, 309 Ill. App. 3d at 669, 722 N.E.2d at 1222. If the defendant enters a plea of guilty following the trial court's concurrence or conditional concurrence, and the trial court subsequently withdraws its concurrence or conditional concurrence, it must advise the defendant of this and allow the defendant the opportunity to withdraw her guilty plea. 177 Ill. 2d R. 402(d)(2); Rossman, 309 Ill. App. 3d at 668, 722 N.E.2d at 1222. If the defendant chooses to withdraw her guilty plea, the case is then transferred to a new judge. 177 Ill. 2d R. 402(d)(2); People v. Bouie, 327 Ill. App. 3d 243, 247, 763 N.E.2d 858, 861 (2002).

The requirement that Collier appear for sentencing did not constitute a properly communicated condition on the trial court's concurrence with the plea agreement. As stated above, the court must specifically state the terms of its conditional concurrence and the sentencing options that it intends to reserve for itself, and ascertain on the record that the defendant understands the limits of the concurrence and every sentencing option thereby reserved, prior to the entry of the guilty plea. Culp, 127 Ill. App. 3d at 926-27, 468 N.E.2d at 1335; Rossman,

309 Ill. App. 3d at 669, 722 N.E.2d at 1222. Here, the trial court concurred with the terms of the plea agreement when, upon hearing the terms of the plea agreement, it told Collier: "Your penalty will be confined to probation up to two years." The trial court then ascertained that Collier understood these to be the terms of the agreement and accepted her guilty plea. The trial court did not tell Collier that its concurrence with the State's recommended two-year cap depended on Collier's attendance at the sentencing hearing until <u>after</u> it had already accepted her plea. Further, the court did not ascertain whether Collier understood the conditions of the court's concurrence.

We note that the trial court in the instant case had every right to withdraw its concurrence when Collier did not appear for sentencing. However, under Rule 402(d)(2), the trial court was obligated to notify Collier that it was going to withdraw its concurrence and allow Collier the opportunity to withdraw her guilty plea. 177 Ill. 2d R. 402(d)(2); <u>Rossman</u>, 309 Ill. App. 3d at 668, 722 N.E.2d at 1222; see also <u>Bouie</u>, 327 Ill. App. 3d at 247, 763 N.E.2d at 861. Hence, when Collier did not appear at sentencing, the trial court could either have sentenced Collier to a term within the range contemplated by the plea agreement or it could have continued the hearing to allow Collier to affirm or withdraw her guilty plea. <u>Rossman</u>, 309 Ill. App. 3d at 668, 722 N.E.2d at 1222. Though the trial court was not

- 11 -

authorized to sentence Collier to a lengthier sentence than that contemplated by the plea agreement with which it had concurred, the trial court was not without additional recourse. As we stated in Rossman, the trial court could order Collier's plea vacated, sending the parties back to the drawing board; order a bail-bond violation (720 ILCS 5/32-10(a) (West 2006)); and/or order Collier to be in contempt of court (720 ILCS 5/1-3 (West 2006)). Rossman, 309 Ill. App. 3d at 668, 722 N.E.2d at 1222. Though our ruling on the conditional-concurrence issue is dispositive, we nevertheless consider two of the State's remaining arguments.

The State argues that we should not have considered whether the trial court adequately communicated its conditional concurrence because the requirement that Collier attend her sentencing hearing was not a condition on the trial court's concurrence at all, but rather the requirement was part of the plea agreement itself. The State's argument is without merit. A plea agreement is between the State and the defendant. People v. Hayes, 159 Ill. App. 3d 1048, 1053, 513 N.E.2d 68, 71 (1987), citing People v. Robinson, 66 Ill. App. 3d 601, 604, 384 N.E.2d 420, 423 (1978). The trial court is not a party to the plea agreement; its only role is to indicate, at the time the agreement is stated, whether it will concur or conditionally concur with the plea agreement. 177 Ill. 2d R. 402(d); Rossman, 309

Ill. App. 3d at 668, 722 N.E.2d at 1222.  In some instances, the conditions stated by the trial court may become part of the plea agreement, but that is not the case here.  See Bouie, 327 Ill. App. 3d at 246, 763 N.E.2d at 860, citing Hayes, 159 Ill. App. 3d at 1053, 513 N.E.2d at 72.

For example, in Hayes, prior to the trial court's acceptance of the defendant's guilty plea, the State requested that the court admonish the defendant that if he failed to appear at his sentencing hearing, he would be eligible for a more severe sentence.  Defense counsel then told the court that he had informed the defendant of the consequences should the defendant fail to appear at sentencing.  The court then admonished the defendant in open court that if he failed to appear at sentencing he could be sentenced in excess of the sentence contemplated by the plea agreement.  The court asked the defendant if he under-stood these terms, and the defendant answered, "Yes, I do."  The court then accepted the defendant's guilty plea and set the date for the sentencing hearing.  Hayes, 159 Ill. 2d at 1050, 513 N.E.2d at 70.  The appellate court held that the requirement that the defendant attend his sentencing hearing became an integral part of the plea agreement where the requirement was clearly communicated to and understood by the defendant at the time of the plea and came about by agreement of the attorneys.  Hayes, 159 Ill. App. 3d at 1054, 513 N.E.2d at 72.

Here, unlike in Hayes, there was no clear communication to the defendant regarding the change in the plea agreement. As stated above, the trial court concurred with the plea agreement when it told Collier that her sentence would not exceed two years. Collier entered her guilty plea based on the assurance of receiving a sentence under that cap. After the trial court accepted Collier's plea, it asked the parties whether it was "part of" the plea agreement that Collier appear for sentencing. Counsel for both parties answered "yes." However, merely labeling a requirement part of the plea agreement does not make it so. The requirement was not brought about by the attorneys, but rather by the trial court. Most critically, the court first brought the requirement to the parties' attention after the court had already accepted Collier's guilty plea and the court never ascertained whether Collier understood the requirement.

The instant case is similar to Bouie, where the appellate court also rejected the State's argument that the requirement that the defendant appear at his sentencing hearing was "part of" the plea agreement. Bouie, 327 Ill. App. 3d at 247, 763 N.E.2d at 861. In Bouie, after the trial court acknowledged the parties' plea agreement, the court stated that it would leave its "options open" as to punishment in the event that the defendant did not appear at his sentencing hearing. The trial court then asked if that created "a problem for anyone." Both the

- 14 -

State and defense counsel answered that it did not.  The defendant did not comment.  The court then accepted the defendant's guilty plea.  After accepting the plea, the court admonished the defendant that if he did not appear for sentencing, the court would sentence the defendant in excess of the sentence contemplated by the plea agreement.  The defendant acknowledged the requirement.  Bouie, 327 Ill. App. 3d at 245, 763 N.E.2d at 859.  The appellate court held that nothing in the series of communications exchanged at the plea hearing "show[ed] unequivocally that the defendant was advised that appearing at the sentencing hearing was part of his plea agreement."  Bouie, 327 Ill. App. 3d at 247, 763 N.E.2d at 861.

Here, the argument against the State on appeal is even stronger than in Bouie because the trial court in the instant case made no mention of the requirement that Collier appear at sentencing before it accepted the guilty plea.  Also, unlike the defendant in Bouie, Collier never personally acknowledged the trial court's admonishment of the requirement, even after the guilty plea was accepted.

Finally, the State argues that we should not have reached the merits of Collier's claim because the trial court was never bound by the State's recommended two-year cap, thus nullifying the issue of whether the court improperly added a condition to its concurrence with the plea agreement.  This argument is not

persuasive.  If a trial court chooses not to concur with a plea agreement, it must admonish the defendant in open court that it is not bound by the terms of the plea agreement and it must tell the defendant that if she persists in her plea, she may be sentenced in excess of the sentence contemplated by the plea agreement.  177 Ill. 2d R. 402(d)(3).  Here, the trial court made no such admonishment.  To the contrary, upon hearing the terms of the plea agreement, the court expressly told Collier: "Your penalty will be confined to probation up to two years."

Accordingly, we vacate Collier's sentence and remand this case to the trial court to either impose a sentence contemplated by the plea agreement or to proceed in keeping with the requirements of Rule 402(d)(2).

### III. CONCLUSION

For the aforementioned reasons, we vacate Collier's sentence and remand with directions consistent with this opinion.

Vacated and remanded with directions.

APPLETON and KNECHT, JJ., concur.