# Illinois Official Reports

## Appellate Court

---

> ### *People v. Hageman*, 2020 IL App (3d) 170637

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUSTIN M. HAGEMAN, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0637 |
| Filed | January 29, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 16-CF-628; the Hon. Stephen A. Kouri, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys, Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Holdridge and McDade concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Justin M. Hageman, appeals aggregate sentencing of 22 years' imprisonment, arguing that the court (1) improperly placed conditions on its concurrence to the parties' sentencing agreement and (2) abused its discretion in sentencing defendant. We affirm.

¶ 2 **I. BACKGROUND**

¶ 3 A supplanting indictment charged defendant with aggravated criminal sexual assault with a weapon (720 ILCS 5/11-1.30(a)(1) (West 2016)), aggravated criminal sexual assault causing bodily harm (*id.* § 11-1.30(a)(2)), aggravated domestic battery (*id.* § 12-3.3(a-5)), and domestic battery (*id.* § 12-3.2(a)(1)). The parties came to a plea agreement. The written agreement stated that it was a partial plea agreement and provided that:

> "The parties agree that they will recommend a sentence of 10 years: 7 years on Aggravated Criminal Sexual Assault/Bodily Harm—Class X Felony (Count 2) plus a mandatory consecutive 3 years on Aggravated Domestic Battery ***—Class 2 Felony (Count 3). Aggravated Criminal Sexual Assault/Weapon—Class X Felony (Count 1) and Domestic Battery—Class 4 Felony (Count 4) are dismissed pursuant to this plea."

The agreement also stated that defendant would be allowed a furlough until April 13, 2017, but that defendant would have to abide by the terms of the pretrial release. The agreement further stated,

> "If the Court finds that the defendant committed *even a single violation* of the pretrial terms during the time the defendant is on furlough, or if the defendant fails to return *** on April 13, 2017, then the parties agree that there is no agreement as to sentencing. The case will proceed to a sentencing hearing, and the defendant faces a sentencing range of 9 years—37 years in [the Illinois Department of Corrections (IDOC)] to be served at 85% and followed by [mandatory supervised release (MSR)] of 3 years to life or at least 4 years." (Emphasis in original.)

The terms of pretrial release included, *inter alia*, that defendant "not possess, use, or consume any illegal drugs." Defendant signed the agreement and the pages outlining the terms of pretrial release.

¶ 4 The parties presented the plea agreement in court. The State told the court that they had "a partial plea to present." The State presented the plea as set out in the written agreement, specifically stating,

> "The terms of the pretrial release are contained in a two-page document incorporated as part of this partial plea agreement. If the Court finds the defendant committed even a single violation of the pretrial terms during the time the defendant is on furlough or if the defendant fails to return *** on April 13, 2017, then the parties agree that there is no agreement as to sentencing. The case will proceed to a sentencing hearing, and the defendant faces a sentencing range of 9 years to 37 years in IDOC to be served at 85 percent and followed by MSR of three years to life or at least four years."

Defense counsel stated that defendant had read through all the paperwork regarding the plea. The following exchange then occurred between the court and defendant,

> "THE COURT: Is this your agreement, [defendant]?
>
> THE DEFENDANT: Yes, sir.

THE COURT: And you understand all the conditions?

THE DEFENDANT: Yes, sir.

THE COURT: And there is one thing in particular of all the things, of all the terms and conditions, there is one thing in particular I want you to understand. If there's a screw up and you don't show up for sentencing, I'm not going to feel obligated to any term—

THE DEFENDANT: All right.

THE COURT: —that's being suggested here. Do you understand that?

THE DEFENDANT: Yes, sir."

¶ 5    As a factual basis the State said that A.L. would testify that defendant was her ex-boyfriend. On December 9, 2016, defendant became angry because he believed that A.L. "had been with someone else." Defendant hit A.L. in the face multiple times, while A.L. begged him to stop. Defendant grabbed her by the hair and punched her in the head. When A.L. tried to escape, defendant grabbed her around the neck, strangled her, and said he was going to kill her and then himself. He produced a knife from his pocket and threatened to kill A.L. Defendant proceeded to remove A.L.'s pants, get on top of her, and insert his penis into her vagina. A.L. told defendant "no," but defendant continued, eventually ejaculating into her vagina. Afterwards, A.L. had severe bruising and swelling to her eyes, marks on her neck, and several patches of hair missing from her scalp. The court admonished defendant and accepted the plea.

¶ 6    At a status hearing after defendant's furlough, the State moved for the court to find that defendant violated his pretrial release as defendant tested positive for and admitted using cocaine. Defense counsel stated, "I will just say, *** [defendant] says he's willing to take the negotiated—fully negotiated plea agreement of ten years today. There was, I guess the State would call it, a violation. As a defense lawyer, I might call it a little hiccup." The State responded,

"The characterization of this as a fully negotiated plea agreement is not correct. It is made clear in the paperwork that this was a partial plea agreement whereby we would recommend that sentence if there were not a single violation of pre-trial terms.

It's all spelled out. It's made very clear. Your Honor even looked at Defendant and said, understand that if you violate, I'm not held to that ten years, and that is 100 percent correct with what we agreed to *** when he was allowed a furlough."

The court set the case for a sentencing hearing, telling defense counsel that, if he chose to do so, he could argue prior to the hearing that the State was bound by the agreement.

¶ 7    At the sentencing hearing, the State submitted photographs showing the injuries A.L. had sustained, as well as photographs from the scene that depicted large clumps of hair that had been ripped from A.L.'s head, an open folding knife on the floor near the bed, and a pair of A.L.'s underwear that had been torn. The State also introduced a copy of an order of protection obtained by A.L. against defendant and in effect on the night in question, the records of the police investigation, and two voicemail messages left by defendant on A.L.'s phone on December 11, 2016. In one voicemail, defendant stated, "If you're gonna get me charged for rape, you better call me or I'm going to come to your fucking apartment and I'm going to kill you now, bitch." In the other message defendant said, "You need to call me back before I come over there and finish what I came there to do. You better call back." A medical examination noted that A.L. had wounds and a small amount of blood on her vagina. A.L. read a victim

impact statement, in which she discussed defendant's controlling nature, mental and emotional abuse, and penchant for anger and violence. She described the night in question and the pain and suffering inflicted upon her. She stated that she has nightmares and suffers from anxiety since then.

¶ 8        In mitigation, defense counsel noted that defendant had many family members and friends supporting him in court and introduced statements written by defendant's mother, brother, and sister. The State asked for the maximum sentence of 37 years' imprisonment. Defendant asked for the original plea term of 10 years' imprisonment. Defendant made a statement, saying solely "sorry *** to [A.L.] for the injuries."

¶ 9        In the presentence investigation report (PSI) defendant stated that he and A.L. had consensual sex. He then said, "I guess I beat her up." Defendant had a prior domestic battery conviction and three convictions for violating an order of protection. Defendant had fathered 13 children, most of whom were with different women. He was unemployed and lived with a friend or with various paramours. Defendant completed a sex offender evaluation, and his scores placed him as a high current risk priority for sexual and violent recidivism and a high risk for general criminal recidivism. The PSI detailed defendant's mental health issues and struggle with addiction, particularly with cocaine. The PSI stated,

> "[Defendant] minimizes the offense for which he has been convicted and blames his actions on his victim's behaviors. Despite this, [defendant] advised he does regret the incident and he regrets hitting [A.L.] [Defendant] does not believe he is guilty of a sex crime and advised he would never do such a thing because he was not brought up that way. [Defendant] wanted the Court to know he is sorry. [Defendant] knows he 'screwed up,' but advised he is not a bad person, he just makes poor decisions."

His psychological evaluation stated,

> "[Defendant] described a long-standing desire to 'hurt someone or something' in order to relieve tension. He has a reckless disregard for his own safety and that of others. He stated, 'I'm the kind of person who just doesn't give a shit anymore.' He is impulsive and fails to plan ahead. He displayed indifference regarding how his actions may have hurt people in his past and reported no change in his emotional state before or after fighting. He was interpersonally detached and superficially charming."

Defendant stated that he had previously made multiple suicide attempts.

¶ 10        The court sentenced defendant to 15 years' imprisonment for aggravated criminal sexual assault causing bodily harm and 7 years' imprisonment for aggravated domestic battery. In doing so the court stated,

> "I've considered the [PSI], the evidence and arguments presented by the parties, the statement made by the defendant. I've considered the statutory matters in aggravation and mitigation, the history and character of the defendant, the circumstances and nature of the offense.
>
> I was struck by both the victim impact statement, moved by it, as well as by the letters in support of [defendant]. I think there are two [defendants] but *** the bad [defendant] is a violent person and is a danger to the community. I don't know if that happens 1 percent of the time or 90 percent of the time, but 1 percent of the time is a danger to the community. And [A.L.] paid a pretty steep price for that and part of my

job *** is to make sure that the community, well, is to make sure justice is done but also to make sure that the community is protected. I intend to do that job.

So I am going to sentence the defendant—and, also, I should add that where as I respect the attorneys in plea agreements that they enter into and so I don't give much—I don't make much inquiry into them other than occasionally I ask has the victim been consulted with it—I don't know if I asked in this case but [the State] usually volunteers that in any event—but I do think seeing what I see here today that that [*sic*] was too light of an agreement. I mean, the pictures, the pictures warrant more than 10 years. They just do. It's not a formula I apply. It just means that this is pretty harsh that one human being would do that to another. And you get to the pictures of the hair that was pulled out, the spots in the back of the head that no longer have hair, that one human being would do that to another human being is not a society that I want to be a part of. So you forfeit your right to be in society for some time because of that."

¶ 11    Defendant filed a motion to reconsider sentence, arguing that the court should have accepted the original plea agreement and sentenced defendant to 10 years' imprisonment and his sentence was excessive. The court denied the motion, stating,

"I want the record to be clear on this. I did not sentence the Defendant to what I did because he violated that furlough condition. He didn't get an extra 10, 12, 15 years because he went on a binge.

What that binge did was it opened up the door for me to review this situation a lot more closely, and upon that review about the nature of the offense and the factors in aggravation and several of the things that I saw in the PSI, I determined that that sentence that I rendered was appropriate."

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, defendant contends the court (1) violated Illinois Supreme Court Rule 402(d) (eff. July 1, 2012) and (2) abused its discretion in sentencing defendant. Because all conditions placed on defendant were explicitly contained in the partial plea agreement, the court did not violate Rule 402(d). Moreover, the court did not abuse its discretion in sentencing defendant where defendant's sentence was within the range and the court considered the aggravating and mitigating evidence before it.

¶ 14    First, defendant argues that the court violated Rule 402(d). Specifically, defendant states that the court "placed conditions on its concurrence to the parties' sentencing agreement, and subsequently, sentenced [defendant] to a term more than double what the agreement contemplated without giving [defendant] the option of persisting in or withdrawing his guilty plea." Illinois Supreme Court Rule 402(d)(2) (eff. July 1, 2012) states, in pertinent part,

"If the judge has indicated his or her concurrence or conditional concurrence [to the plea agreement], the judge shall so state in open court at the time the agreement is stated ***. If the defendant thereupon pleads guilty, but the trial judge later withdraws his or her concurrence or conditional concurrence, the judge shall so advise the parties and then call upon the defendant either to affirm or to withdraw his or her plea of guilty. If the defendant thereupon withdraws his or her plea, the trial judge shall recuse himself or herself."

¶ 15 We find that the court did not violate Rule 402(d). When the parties presented the plea to the court, it was a partially negotiated plea. The parties agreed that defendant would plead guilty to two of the counts, two would be dismissed, and defendant would be given a furlough, with specifically enumerated conditions of release, including that defendant not use any drugs. As long as defendant did not violate any of the conditions of release during his furlough, he would be sentenced to an aggregate term of 10 years' imprisonment. However, if defendant violated any of the terms of release, any agreement as to sentence would vanish, the plea would be a blind plea, and the court would conduct a sentencing hearing. All these terms were in the plea before it was even presented to the court. Defense counsel stated that defendant had read the whole plea agreement, with the conditions of release, and defendant had signed the agreement. The court asked defendant if he understood and agreed with the plea agreement as written and presented by the State. Specifically, the court stated, there was "one thing in particular of all the things, of all the terms and conditions, there is one thing in particular I want you to understand." The court confirmed that defendant understood that, pursuant to the agreement, if defendant "screw[ed] up" or did not show up to court after his furlough, the court could sentence him to more than 10 years' imprisonment. The record is clear that the court did not place any conditions on its concurrence with the plea. Instead, the court accepted the plea as written by the parties. The conditions that were placed on defendant were part of the plea agreement. When defendant violated the conditions of release, pursuant to the plea agreement, the plea was converted to a blind plea, and the court held a full sentencing hearing. See *People v. Hayes*, 159 Ill. App. 3d 1048, 1054 (1987) ("[T]he provision for a stiffer sentence if defendant failed to appear became an integral part of the plea agreement, was clearly communicated to and understood by defendant at the time of the plea, compensated for defendant's legitimate benefit in remaining at liberty until sentencing, and came about by agreement of the attorneys, rather than through judicial vindictiveness."). Therefore, the court did not conditionally concur with the plea or withdraw its concurrence and did not violate Rule 402(d)(2).

¶ 16 In coming to this conclusion, we reject defendant's reliance on *People v. Collier*, 376 Ill. App. 3d 1107, 1112 (2007), *People v. Bouie*, 327 Ill. App. 3d 243, 247 (2002), and *People v. Rossman*, 309 Ill. App. 3d 662, 668 (2000). In each of these cases, the conditions were mentioned by the court after accepting the plea and were not included by the parties as terms of the plea agreement, as we have here. See *Collier*, 376 Ill. App. 3d at 1109-10; *Bouie*, 327 Ill. App. 3d at 245, 247; *Rossman*, 309 Ill. App. 3d at 668.

¶ 17 Second, defendant argues that the court abused its discretion in sentencing him to an aggregate term of 22 years' imprisonment. Specifically, defendant contends that the court failed to consider the mitigating evidence and the sentence was excessive.

¶ 18 A circuit court's sentencing decisions are entitled to great deference and will not be altered by a reviewing court absent an abuse of discretion. *People v. Markley*, 2013 IL App (3d) 120201, ¶ 31. The circuit court is granted great deference by reviewing courts because it is in a better position to determine the appropriate sentence since it has the opportunity to weigh factors like "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentence that falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense or greatly at variance with the spirit and purpose of the law. *People v. Alexander*, 239 Ill. 2d 205, 215 (2010).

¶ 19    It is not our duty on appeal to reweigh the factors involved in the circuit court's sentencing decision. *Id.* at 214-15. It is up to the circuit court "to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case." *People v. Latona*, 184 Ill. 2d 260, 272 (1998). The court cannot ignore a pertinent mitigating factor (*People v. Burnette*, 325 Ill. App. 3d 792, 808-09 (2001)), although the weight to be given each factor depends on the facts and circumstances of each case (*People v. Gross*, 265 Ill. App. 3d 74, 80 (1994)). When mitigating evidence is before the circuit court, it is assumed that the court considered it, unless the record indicates otherwise. *People v. Thompson*, 222 Ill. 2d 1, 37 (2006). It is not our duty on appeal to reweigh the factors involved in the circuit court's sentencing decision. *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995).

¶ 20    We construe defendant's argument as an invitation to reweigh the sentencing factors, which we will not do. See *id.* There is no indication in the record that the court failed to consider any of the mitigating evidence. The court specifically stated that it considered all the evidence, including the PSI and defendant's history, and the mitigating factors. The PSI included information regarding defendant's struggles with addiction. The court is not required to recite and assign value to each factor it considered. *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011). Though defendant may believe his addiction merited a lesser sentence, the court was not required to agree. We emphasize that a defendant's addiction or potential for rehabilitation are not entitled to greater weight than the seriousness of the offense. *Coleman*, 166 Ill. 2d at 261. The seriousness of the offense is the most important factor the court considers in sentencing a defendant. *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010). Here, defendant's beating of and forcible sex with A.L. was gruesome. Defendant's sentence of 15 years' imprisonment for aggravated criminal sexual assault causing bodily harm falls within the range of 6 to 30 years' imprisonment (730 ILCS 5/5-4.5-25(a) (West 2016)), and his sentence of 7 years for aggravated domestic battery falls within the range of 3 to 7 years' imprisonment (*id.* § 5-4.5-35(a)). We cannot say the sentence imposed was "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 21    In coming to this conclusion, we reject defendant's contention that the court "improperly increased [defendant's] ultimate sentence by 12-years." Defendant states that "The court's decision to sentence [defendant] to an aggregate term of 22 years' imprisonment conflicts with its initial acceptance of the 10-year sentencing agreement." Just because the court initially accepted the plea of 10 years' imprisonment does not mean that it was bound to give defendant a 10-year sentence when defendant violated the terms of his plea agreement. Moreover, the court accepted the plea without having the evidence that it later received at sentencing. In fact, the court specifically stated this when denying the motion to reconsider, stating,

    "What [the plea agreement violation] did was it opened up the door for me to review this situation a lot more closely, and upon that review about the nature of the offense and the factors in aggravation and several of the things that I saw in the PSI, I determined that that [*sic*] sentence that I rendered was appropriate."

¶ 22                                    III. CONCLUSION

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County.

¶ 24    Affirmed.