**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210493-U

Order filed March 17, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal Nos. 3-21-0493 and 3-21-0494 Circuit Nos. 17-CF-1567 and 16-CF-1743 |
| ERIK C. WOYTOWYCH, | ) ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Brennan and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: (1) Defendant's conviction and sentence for AUUW does not violate the proportionate penalties clause of the Illinois Constitution, and (2) the sentences imposed on defendant's convictions for AUUW and aggravated domestic battery are not excessive.

¶ 2     Defendant, Erik C. Woytowych, appeals his conviction of aggravated unlawful use of a weapon (AUUW), arguing that this conviction and sentence for AUUW violates the

proportionate penalties clause. Alternatively, defendant argues that the sentences imposed by the Will County circuit court were excessive. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4         In August 2016, the State charged defendant with five counts of AUUW, Class 4 felonies (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (d)(2) (West 2016)), and one count of unlawful violation of an order of protection, a Class A misdemeanor (*id.* § 12-3.4(a)(1)(i)). The allegations, in pertinent part, alleged that defendant committed the offense of AUUW where he knowingly carried an uncased, loaded, and immediately accessible firearm, in public, at a time when he did not possess a valid license under the Firearm Concealed Carry Act or a valid Firearm Owner's Identification card.

¶ 5         In June 2017, defendant was hospitalized for psychiatric treatment and therapy. The court ordered a fitness evaluation to be performed. On August 2, 2017, prior to the fitness evaluation's completion, defendant was arrested and charged with aggravated domestic battery, a Class 2 felony (*id.* § 12-3.3(a-5)), and AUUW (*id.* § 24-1.6(a)(1)(3)(C)).

¶ 6         The aggravated domestic battery charge alleged that defendant "made contact of an insulting or provoking nature with [R.D-W.], a family or household member, in that said defendant strangled [R.D-W.]" At the initial hearing on the newest charges, the court was informed that defendant had been diagnosed with depression and an anxiety disorder. Additionally, defendant had been experiencing seizures and confusion and was being evaluated for a potential diagnosis of bipolar disorder or posttraumatic stress disorder. Defendant was found fit to stand trial on November 30, 2017. During the pendency of the case, defendant sought treatment for his alcohol abuse on several occasions. Defendant completed both an inpatient and outpatient program in late 2019.

¶ 7        Defendant entered a partially negotiated plea of guilty on August 16, 2021. Specifically, he pled guilty to one count of AUUW from the 2016 case and aggravated domestic battery from the 2017 case. All remaining charges were dismissed pursuant to the plea. There was no agreement as to the sentence. The State provided a factual basis for each charge.

¶ 8        The factual basis for AUUW indicated that police received complaints of two vehicles driving erratically. The vehicles did not strike one another. Defendant and another individual were driving. A road rage incident occurred. During that incident, defendant exited his vehicle and "displayed a revolver type of a firearm." Defendant returned to his vehicle and drove to his residence. The other driver recorded defendant's license plate number and informed the police. When police arrived at defendant's residence, a search of the vehicle revealed several firearms, including a revolver which was uncased and loaded with live ammunition.

¶ 9        The factual basis for aggravated domestic battery indicated that defendant and his wife, R.D-W., had argued. Defendant twisted R.D-W.'s arm and wrist. He also placed his hands around her throat and squeezed for approximately 10 seconds during which time she had trouble breathing. The court accepted the plea and set the matter for a sentencing hearing on September 20, 2021.

¶ 10        At the sentencing hearing, R.D-W. was called to testify. During her testimony, she read a victim impact statement where she detailed various abuse and threats perpetrated on her by defendant throughout their relationship. Regarding the strangulation incident, she stated:

> "I thought I was going to die that day. And if I hadn't *** been able to get out of it, I would have. It is certain [defendant] was angry about nothing and had thrown something at me that hit me in the lip and busted my lip open. I called 911 because I could always tell when the abuse was going to [be] severe. I was trying

3

to get out of the house. I was pulled back in. I don't recall why he was angry. Then again, he's always angry for no reason.

When I was trying to walk out of the room, he used his leg to slam the door and pinned my arm in the door with such force I thought he broke it. When he let free of the door, it was only to grab me and start to punch me and slap me. I kicked and fought back, but he's 6 foot 4, he was intoxicated, and he also used drugs such as Tramadol, Klonopin, and Norco to get more high off the alcohol.

He smashed my head against the armoire in the bedroom and was still punching and hitting me. He grabbed me by my hair and pulled me toward the closet. He had me pinned against the closet doors and my feet off the ground and his hands around my throat and he was choking me. I was nowhere near the floor or even my tippy toes. I was already a bit fuzzy from my head being smashed so much already, and he was also banging my head against the closet doors at this point. I thought I was going to die. I could not breathe. I could not touch the floor and my head was taking an enormous amount of blows. *** I reached for something, anything, on the dresser next to me to hit him with so I could free. I was getting dizzy and close to losing consciousness. I don't recall what my hands found, but I picked it up and swung at his face with it. It was enough for him to drop me, and half conscious, I ran for the front door. He came out after me with a screwdriver, yelling since he was going to jail he might as well kill me. At this point, the police just showed up. He dropped the screwdriver and immediately told them I was hitting him and wanted me arrested. He was bleeding from his nose. The police had been in my home so many times at this point that they were

aware of [defendant] and his abuse and arrested him. *** I was shaken and terrified and grateful to be alive."

After reading her statement, R.D-W. was cross-examined by defense counsel.

¶ 11 The presentence investigation report (PSI) detailed defendant's criminal background. Defendant's prior criminal history included only misdemeanors, including two operating while under the influence convictions from Michigan which defendant received while on bond for the instant felony cases in 2018 and 2020. Defendant was placed on a term of probation on his 2018 operating while under the influence conviction and served 270 days in a Michigan county jail on his 2020 operating while under the influence conviction. The PSI also detailed defendant's physical and mental health and substance abuse issues, as well as his educational and employment history and familial relationships. Evidence of defendant's completion of various treatment programs was presented. Letters of support for defendant were also submitted to the court from neighbors, friends, and family members outlining his good character and helpful nature. The parties presented their arguments and sentencing recommendations. In his statement in allocution, defendant detailed his struggles with alcohol and his continued efforts to maintain sobriety.

¶ 12 At the conclusion of the hearing, the court stated:

"I've had a chance to consider the nature of the charges, *** and the evidence presented here in aggravation and mitigation. The testimony of—that the State presented via the victim impact statement, the letters that were presented to the Court that I took a break to look at, the arguments of counsel.

This case has been going on for a long time. *** These are serious charges, especially the aggravated domestic battery, the Class 2 felony. I think

probation would deprecate the seriousness of the offenses and would not serve the ends of justice. And, in addition, I believe that [R.D-W.] also deserves some peace in her life. And for those reasons and because, though you have no prior felony history, you do have in-and-out misdemeanor history."

The court imposed a sentence of two years' imprisonment for AUUW and a consecutive term of five years' imprisonment for aggravated domestic battery. Defendant filed a motion to reconsider sentence, which was denied. Defendant appeals.

¶ 13                                II. ANALYSIS

¶ 14        Defendant argues that his conviction under the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2016)) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), because the statute contains the identical elements as the Class A misdemeanor unlawful use of a weapon (UUW) statute (*id.* § 24-1(a)(4)). Accordingly, defendant maintains that his conviction and sentence for AUUW must be vacated, and he should be convicted and sentenced on the misdemeanor offense of UUW. Alternatively, defendant argues that the court abused its discretion in imposing excessive sentences on his convictions where overwhelming mitigating evidence warranted minimum terms of imprisonment.

¶ 15                 A. Proportionate Penalties Clause Challenge

¶ 16        When reviewing the constitutionality of the AUUW statute, we presume the statute is constitutional and the party challenging the constitutionality of the statute carries the burden of proving it is unconstitutional. *People v. Aguilar*, 2013 IL 112116, ¶ 15. We review issues involving the constitutionality of a statute *de novo*. *People v. Sharpe*, 216 Ill. 2d 481, 486-87 (2005).

¶ 17    The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Relevant to this appeal, criminal sentences may be found unconstitutionally disproportionate where identical offenses are given different sentences. *People v. Miller*, 202 Ill. 2d 328, 338 (2002). If two statutes require the same elements, but result in different penalties, then one of these penalties has not been set in accordance with the seriousness of the offense and is unconstitutionally disproportionate. *People v. Ligon*, 2016 IL 118023, ¶ 20.

¶ 18    Regarding defendant's AUUW claim, we recently decided this same issue in *People v. Brooks*, 2022 IL App (3d) 190761, ¶ 21. The facts of the present case are similar to the facts in *Brooks* and raises the same argument. Like this case, the defendants in *Brooks* were charged with AUUW and argued on appeal that they should be sentenced under the UUW misdemeanor statute as the charges required the same essential elements. *Id.* ¶ 8. In *Brooks*, we found that AUUW and UUW offenses do not carry identical elements, and the higher sentence was not constitutionally disproportionate. See *id.* ¶ 20 ("Under the UUW statute, a conviction may be sustained based on possession of an unloaded gun that is uncased and immediately accessible or on possession of a loaded gun that is encased and immediately accessible. An AUUW conviction could not be sustained under either of these scenarios."). We find *Brooks* applicable to the instant case. Accordingly, we find that defendant's AUUW conviction and sentence does not violate the proportionate penalties clause.

¶ 19        B. Excessive Sentencing on AUUW and Aggravated Domestic Battery

¶ 20    Next, we consider whether the court imposed excessive sentences on defendant's convictions for AUUW and aggravated domestic battery. A court's sentencing decision will not

be reversed on appeal, absent an abuse of discretion. *People v. Bush*, 2022 IL App (3d) 190283, ¶ 118. A reviewing court "must not substitute its judgment for that of the trial court simply because the reviewing court would have weighed the factors differently." *People v. Jackson*, 375 Ill. App. 3d 796, 800-01 (2007). "[A] sentence within the statutory limits will not be considered excessive unless it greatly varies with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Lee*, 379 Ill. App. 3d 533, 539 (2008).

¶ 21        "Importantly, it is the seriousness of the crime—rather than the presence of mitigating factors—that is the most important factor in determining an appropriate sentence." *People v. Decatur*, 2015 IL App (1st) 130231, ¶ 12. The court is presumed to have considered any mitigating evidence unless the record contains some indication to the contrary. *People v. Franks*, 292 Ill. App. 3d 776, 779 (1997). The court is not required to "recite and assign a value to each factor." *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. It is defendant's burden to show that the court did not consider the relevant factors. *Id.*

¶ 22        The statutory range for a Class 4 felony is one to three years' imprisonment (730 ILCS 5/5-4.5-45(a) (West 2016)), while the range for a Class 2 felony is three to seven years' imprisonment. (*id.* § 5-4.5-35(a)). Defendant's two-year sentence for AUUW and five-year sentence for aggravated domestic battery fall well within the applicable statutory range for each offense. Sentences which fall within the applicable range are presumptively valid. See *People v. Busse*, 2016 IL App (1st) 142941, ¶ 27.

¶ 23        Defendant argues that the court erred in considering R.D-W.'s victim impact statement where she discussed other uncharged instances of abuse and bad acts outside the conduct for which he had been convicted. However, the court may properly consider evidence of other criminal conduct perpetrated by defendant, even if defendant has not been criminally charged or

8

convicted. *People v. English*, 353 Ill. App. 3d 337, 339 (2004). To be properly considered, "[e]vidence of other criminal conduct should be presented by witnesses, who can be confronted and cross-examined *** so that the defendant has an opportunity to rebut the testimony." *Id.* Here, R.D-W. testified to numerous instances of abuse and other criminal conduct perpetrated on her by defendant. She was cross-examined by defense counsel. Accordingly, the court did not err in considering the entirety of R.D-W.'s testimony.

¶ 24      The remainder of defendant's arguments support his assertion that the mitigating evidence presented was entitled to more weight than it was afforded. The court indicated that it weighed the factors in mitigation and aggravation when deciding its sentence. Defendant has failed to affirmatively show that the court failed consider any of the relevant mitigating factors or the mitigating information he presented. See *Wilson*, 2016 IL App (1st) 141063, ¶ 11 ("[A] defendant 'must make an affirmative showing that the sentencing court did not consider the relevant factors.' " (quoting *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38)). Defendant is essentially asking this court to reweigh that mitigating evidence, however, the weight to be given mitigating factors is within the court's discretion and this court is not to reweigh those factors on appeal. See *People v. Hageman*, 2020 IL App (3d) 170637, ¶ 19.

¶ 25      While defendant may believe that the mitigating evidence merited a minimum sentence, the court was not required to agree. The record demonstrates that the court considered the relevant factors and even recessed the proceedings to review each of the character letters that defendant submitted. The court considered the evidence presented by R.D-W. and defendant's misdemeanor history. While defendant had no felony background, he did have several misdemeanor convictions, some of which occurred while defendant was out on bond for the present cases.

¶ 26     Further, the court found that the offenses were very serious in nature, especially the aggravated domestic battery charge. During the AUUW incident, defendant displayed a loaded revolver to another individual in the midst of a road rage incident and regardless of the severity of the injuries, aggravated domestic battery is a violent crime. See 725 ILCS 120/3(c) (West 2016) (" 'Violent crime' means *** any felony in which force *** was used against the victim."). We cannot say that the weight the court afforded the seriousness of the crimes constitutes an abuse of discretion.

¶ 27     We find that the court considered the relevant factors in mitigation and aggravation, and it did not consider any improper evidence. Defendant's sentences were within the applicable range, did not greatly vary from the spirit of the law, and were not manifestly disproportionate to the nature of the offense. Accordingly, we find that defendant's sentences are not excessive, and the court did not abuse its discretion in sentencing defendant. See *Lee*, 379 Ill. App. 3d at 539.

¶ 28                                        III. CONCLUSION

¶ 29     The judgment of the circuit court of Will County is affirmed.

¶ 30     Affirmed.