# Illinois Official Reports

## Appellate Court

---

### *People v. Wilson*, 2016 IL App (1st) 141063

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY WILSON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-1063 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-13758; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Samuel M. Hayman, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Margaret A. Hayes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Justice Pierce concurred in the judgment and opinion.<br>Presiding Justice Hyman dissented, with opinion. |

¶ 1    Following a jury trial, Anthony Wilson, the defendant, was convicted of delivery of a controlled substance within 1000 feet of a church and sentenced to 15 years' imprisonment. On appeal, defendant contends that his sentence is disproportionate to the seriousness of his offense and constitutes an abuse of discretion by the trial court. We affirm.

¶ 2    Defendant was charged with one count of delivery of a controlled substance and one count of delivery of a controlled substance within 1000 feet of a church. At trial, two police officers testified and established that defendant sold two bags of white powder to an undercover officer near 3724 West Lexington in Chicago on June 22, 2013. A forensic scientist testified that the powder weighed 1.04 grams and tested positive for heroin. Additionally, the State entered a stipulation between the parties that defendant was arrested 410 feet from a church. The jury found defendant guilty on both counts. The court merged the counts and the case proceeded to sentencing.

¶ 3    At sentencing, the parties established that defendant had prior felony convictions for possession of a stolen motor vehicle (1986); attempted robbery (1989); delivery of a look-alike substance (1991); burglary (1992); possession of a controlled substance (1996, 1997, 2001, 2003, 2004, 2008, 2010, and two convictions from 1995); and manufacturing or delivery of a controlled substance (2007).[1] The presentence investigation report (PSI) indicated that defendant was the youngest of four siblings and had a "normal childhood." He graduated from high school and worked as a clerk at a hardware store from 1979 to 1989. At the time of his arrest, he lived with his mother and provided for his five adult children "when he was able." Defendant denied using alcohol, but admitted to using "several bags" of heroin each day "for years" before his arrest. He "detoxed" while in custody and was no longer addicted at the time of sentencing. Defendant denied gang affiliation, but the Chicago police department reported that defendant was a member of the Conservative Vice Lords.

¶ 4    In aggravation, the State argued that defendant "began a life of drug dealing and drug possession at a very early age" and had committed both drug-related and nondrug-related offenses. The State also noted that defendant had been sentenced to terms of one to five years for his 14 prior felony convictions. Based on defendant's continued drug dealing and "life of crime," the State requested a sentence "much higher" than the sentences he had previously received.

¶ 5    In mitigation, defense counsel argued that defendant was 48 years old at sentencing, had been addicted to heroin since age 24, and had spent "at least half of his adult life" in prison. According to counsel, defendant was a "product of his environment" and his addiction caused him to surround himself with people "involved in the drug trade." Counsel acknowledged that defendant's background was "not mitigating" but "aggravating in ever[y] sense of the word." However, counsel urged that defendant was a nonviolent "petty" offender and only sold drugs to "support his own habit." Additionally, counsel observed that defendant had been respectful throughout the proceedings and had family, including his elderly mother, who cared about him. Consequently, counsel argued that defendant did not qualify for a sentence at the "high

---

[1]The trial court indicated that it would not consider a conviction for unauthorized use of a weapon (1984), or pending charges for manufacturing or delivery of more than one gram and less than 15 grams of heroin.

end of the sentencing range" and that a nine-year term would be appropriate. Defendant declined to speak in allocution.

¶ 6 The court sentenced defendant to 15 years' imprisonment. In imposing sentence, the court stated that it had considered the evidence and arguments and recited each statutory factor in mitigation and aggravation. The court found the only applicable mitigating factor was the hardship that defendant's Class X sentence would cause his family and the "people that he has a relationship with." The court could not discern whether defendant's "character and attitude" indicated he was likely to commit another crime but noted that his "past behavior" suggested that his conduct "will likely recur." Moreover, the court stated that defendant had a "very significant history of prior delinquency," which rivaled "the top five of any [criminal background] I've seen in such a short amount of time for somebody of the Defendant's age." According to the court, defendant's 14 prior felony convictions "weigh[ed] very, very significantly" and demonstrated that "at no time from 1986 until 2013 can he sustain any period of time whatsoever without committing offenses." The court observed that the present offense was nonviolent and that defendant's sentence would not deter other offenders. However, "[b]alancing everything together," including the nature of defendant's Class X offense, his criminal background, and the factors in aggravation and mitigation, the court concluded that a nine-year sentence would "deprecate the seriousness of this case coupled with his background."

¶ 7 Defendant filed a motion for reconsideration of sentence, which the court denied.

¶ 8 On appeal, defendant acknowledges that the trial court "considered the statutory factors in aggravation and mitigation," but contends he was not sentenced according to the seriousness of his offense or with the goal of rehabilitation. Defendant submits that his 15-year term is disproportionate to the $20 drug transaction, exceeds the average sentence for "more serious" crimes, and contravenes the purpose of the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2014)) by punishing him like a drug "trafficker" rather than a "petty distributor." Defendant also argues that his term of imprisonment exceeds his prior sentences and that courts have reduced comparable sentences for "more serious" crimes, even for repeat offenders. Moreover, defendant claims that the court "gave no indication" it had considered his addiction, his age, or the fact his criminal history involved "minor" crimes. Defendant acknowledges that his "extensive criminal history" tends to "undercut his potential for rehabilitation" and that his offense caused social harm "deserving of some retribution" but submits that his drug addiction, "life situation," and nonviolent conduct favor leniency.

¶ 9 In response, the State argues that the trial court did not abuse its discretion where it considered the factors in aggravation and mitigation, including defendant's prior felony convictions, before imposing a term 15 years below the statutory maximum. Defendant, in reply, maintains that his sentence nonetheless must be reviewed for "substantive reasonableness" and does not serve the penological goals of deterrence, rehabilitation, incapacitation, or retribution.

¶ 10 The reviewing court considers a trial court's sentencing decision with an abuse-of-discretion standard of review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A sentence will be considered an abuse of discretion where it is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). However, "[t]he trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great

deference." *Id.* This is because the trial judge "observed the defendant and the proceedings," and is better positioned to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id.* at 212-13.

¶ 11    A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. However, the seriousness of an offense, and not mitigating evidence, is the most important factor in sentencing. *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 94. The trial court is presumed to consider "all relevant factors and any mitigation evidence presented" (*People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48), but has no obligation to recite and assign a value to each factor (*People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011)). Rather, a defendant "must make an affirmative showing that the sentencing court did not consider the relevant factors." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. A reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Alexander*, 239 Ill. 2d at 213 (quoting *Stacey*, 193 Ill. 2d at 209). Moreover, our supreme court has expressly declined to compare sentences imposed in unrelated cases. *People v. Fern*, 189 Ill. 2d 48, 62 (1999).

¶ 12    A sentence within the statutory guidelines is presumed proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Delivery of more than one gram but less than 15 grams of heroin is a Class 1 felony. 720 ILCS 570/401(c)(1) (West 2014). The sentence for a Class 1 felony ranges from 4 to 15 years. 730 ILCS 5/5-4.5-30(a) (West 2014). Where, as here, a defendant is convicted of delivering more than one gram of heroin within 1000 feet of a church, the crime is a Class X offense (720 ILCS 570/407(b)(1) (West 2014)), with a sentencing range from 6 to 30 years (730 ILCS 5/5-4.5-25(a) (West 2014)).

¶ 13    In this case, the trial court did not abuse its discretion in sentencing defendant. The 15-year prison term is presumed proper, as it falls well within the statutory guidelines for a Class X felony and is not disproportionate to defendant's eleventh drug conviction and fifteenth felony conviction overall. *People v. Kelley*, 2013 IL App (4th) 110874, ¶ 47 (affirming sentence where defendant had eight prior drug convictions and was sentenced to prison five times). The trial court noted that a lesser sentence would deprecate the seriousness of the present offense in view of defendant's extensive criminal history. *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) ("criminal history alone" may "warrant sentences substantially above the minimum"). Moreover, defendant was not deterred by previous, more lenient sentences. *People v. Hill*, 408 Ill. App. 3d 23, 29-30 (2011) (nonviolence and addiction did not mandate reduced sentence where defendant had 13 prior drug-related convictions).

¶ 14    Defendant argues, however, that the trial court "failed to recognize" that the Class X status of the present offense resulted from "trivial facts," namely, that he sold 0.04 gram of heroin above the Class X threshold and conducted the transaction within 1000 feet of a church. This position lacks merit, as nothing in the record suggests the court relied on either fact in formulating defendant's sentence within the statutory Class X sentencing range. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009) (defendant bears burden of establishing that sentence was based on improper considerations). To the contrary, defendant correctly concedes that the court reached its sentence after considering the statutory factors in aggravation and mitigation. Consequently, we find no abuse of discretion in defendant's sentence.

¶ 15    In conclusion, we find that the defendant's arguments for reducing his sentence persuasive. However, as an intermediate appellate court, we are constrained by supreme court precedent mandating deferential review of the trial court's sentencing decisions and by legislation prescribing the sentences for offenders with multiple convictions. Therefore, we affirm the judgment of the trial court, but we recommend that the defendant present his arguments to the Illinois Supreme Court or to the Illinois legislature.

¶ 16    Affirmed.

¶ 17    PRESIDING JUSTICE HYMAN, dissenting.

¶ 18    The principle of proportionality between crime and punishment is so fundamental, so inviolable, that the 1970 Illinois Constitution enshrines it in article I, section 11. Ill. Const. 1970, art. I, § 11. This provision protects individuals from disproportionate sentences and requires that all penalties be determined based on the seriousness of the offense and with the objective of rehabilitating the offender to a useful citizen. ("Proportionality clause" here refers to both clauses, proportionate penalties and rehabilitation.) I believe Anthony Wilson's 15-year sentence was excessive in light of the nature of his crime—Wilson sold a $20 bag of heroin to an undercover police officer to pay for his unshakeable drug habit.

¶ 19    Lengthy incarceration for nonviolent drug-addicted offenders has not served as a sufficient deterrent to other nonviolent drug offenders. See Mirko Bagaric, Samantha Hepburn, & Lidia Xynas, *The Senseless War: The Sentencing Drug Offenses Arms Race*, 16 Or. Rev. Int'l L. 1 (2014) (asserting that available data suggest no correlation between longer prison terms for drug offenders and reduction in availability and use of drugs). Neither has Wilson's prior stints in prison defeated his drug habit or made him into a useful, law-abiding citizen. Because Wilson's criminal history has been nonviolent and he acknowledges his drug problem and appears willing to undergo drug treatment, I would remand for a determination of his eligibility for participation in a drug court program under the Drug Court Treatment Act. 730 ILCS 166/1 *et seq.* (West 2014).

¶ 20    Reviewing courts accord deference to a circuit court's sentencing decision because of its unique perspective in assessing an appropriate sentence. See *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Consequently, a reviewing court usually will not substitute its judgment for that of the circuit court merely because it would have weighed the various sentencing factors differently. *Id.* at 209. While wide, the circuit court's discretion in sentencing is not without limits. *Id.* A sentence within the statutory range "will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. Under those circumstances, a reviewing court may reduce the sentence imposed by the trial court. See Ill. S. Ct. R. 615(b)(4) (eff. Aug. 27, 1999). And for an important and essential reason—Illinois courts "must adhere to our constitution's mandate that penalties be determined according to the seriousness of the offense." *Stacey*, 193 Ill. 2d at 210-11; see Ill. Const. 1970, art. I, § 11 (sentences determined "both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship").

¶ 21    In *Stacey*, our supreme court invoked the constitutional mandate to reduce a defendant's excessive sentences from 25 years to 6 years. The court did not reweigh the aggravating and mitigating factors but instead, relied exclusively on "the nature of the crimes" to construe the

defendant's sentence as unconstitutionally excessive. *Stacey*, 193 Ill. 2d at 210. Under *Stacey* and article I, section 11, of the Illinois Constitution, a reviewing court may reduce a sentence that is "manifestly disproportionate" to the nature of the offense or the circumstances of the case, even if the trial court properly weighed the aggravating and mitigating factors in determining a sentence. Wilson's sentence does fall within the statutory limits, but I believe that because of the nature of his offense it was excessive and triggers our constitutional obligation to provide relief.

¶ 22   "A sentence lacking any legitimate penological justification is by its nature disproportionate to the offense," Justice Kennedy reemphasized in *Graham v. Florida*, 560 U.S. 48, 71 (2010). Thus, we must analyze the justification for Wilson's sentence.

¶ 23   As the circuit court noted, Wilson's offense—delivering 1.04 grams of heroin within 1000 feet of a church—was nonviolent in nature. Like his prior offenses, which were also nonviolent, one thing motivated him—an evil master known as chronic drug addiction. While not an excuse or justification for what Wilson did, drug addiction has been criminalized and Wilson's particular circumstances indicate he is a prisoner both of his addiction and due to his addiction.

¶ 24   In 2011, the American Society of Addiction Medicine redefined addiction as a chronic brain disease, as opposed to a social or behavioral disorder. American Society of Addiction Medicine, Public Policy Statement: Definition of Addiction, http://www.asam.org/ docs/default-source/public-policy-statements/1definition_of_addiction_long_4-11.pdf. Like other chronic diseases, addiction involves cycles of relapse and remission. Without treatment or recovery activities, addiction is progressive and can result in disability or premature death." *Id.* Like alcoholism and gambling, drug addiction "possesses" its victim. See National Drug Control Strategy, https://www.whitehouse.gov/ondcp/drugpolicyreform. Wilson certainly fits this description. He became addicted to heroin when he was 24 years old and, thus, has been an addict, with periods of recovery and relapse for more than half of his life.

¶ 25   Does sentencing Wilson to 15 years in prison help him recover from his addiction and make him a useful citizen? Not based on his stays in prison and on numerous studies. *Id.* (discussing reforms, like the expansion of specialized courts, which divert nonviolent drug offenders into treatment instead of prison). Although more than 50% of state prisoners meet the criteria for a diagnosis of drug abuse or dependence, at most, 10% of those surveyed received clinical drug treatment while incarcerated. Gary A. Zarkin, Alexander J.Cowell, Katherine A. Hicks, Michael J. Mills, Steven Belenko, Laura J. Dunlap, Kimberly A. Houser & Vincent Keyes, *Lifetime Benefits and Costs of Diverting Substance-Abusing Offenders from State Prison*, J. Crime & Delinq. (Nov. 2012). Even when prisoners do get treatment in prison, it is not as effective as community-based treatment, which helps people reintegrate themselves into the community. *Substance Abuse Treatment and Public Safety*, Just. Pol'y Inst. (Jan. 2008), http://www.justicepolicy. org/images/upload/08_01_rep_drugtx_ac-ps.pdf. Moreover, drug treatment is less expensive and more cost-effective than incarceration and studies suggest that if just 10% of eligible offenders were sent to community-based substance abuse treatment programs, the criminal justice system would see a $4.8 billion savings. Thus, because alternatives to lengthy incarceration benefit both the addict and society at large, I believe that we would be better served if drug addicts, like Wilson, who are willing to undergo treatment, were sentenced to shorter prison terms, subject to successful and ongoing participation in community based-drug treatment programs.

¶ 26    Further, Wilson's sentence reflects an offense considerably more egregious and more serious than his. Wilson made a $20 delivery of heroin to an undercover police officer. The amount of drugs in question—1.04 grams—was 0.04 gram over the amount that makes it a Class 1 felony, subject to a 4- to 15-year sentence (before the enhancement for delivery within 1000 feet of a church, which put the range at 6 to 30 years). There is no question this was a small transaction for the sole purpose of making $20 to feed Wilson's own drug habit.

¶ 27    As with Wilson's prior convictions there was no violence or guns involved. Yet, Wilson's 15-year sentence is equivalent to or in excess of the average sentence for more heinous crimes, including criminal sexual assault (9.7 years), predatory criminal sexual assault (10.8 years), aggravated battery with a firearm (10.9 years), aggravated kidnapping (13.2 years), and armed robbery resulting in great bodily harm (14.4 years). Illinois Sentencing Policy Advisory Council, Report on House Bill 4123, Changes to Truth in Sentencing Restrictions, Apr. 2015 (http://ww.icjia.il.us/spac/pdf/HB4123_TIS_Restrictions_Nekritz_04915.pdf).

¶ 28    Moreover, Wilson's sentence does not serve the General Assembly's purpose in enacting the Controlled Substances Act, which, according to section 100 of the Act, was "not *** to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances." 720 ILCS 570/100 (West 2014). That is precisely what this sentence does. Consider that the average sentence for a Class X drug offense, usually involving 100 grams or more, is 11 years. *Id.*

¶ 29    Incarcerating Wilson for 15 years is also unlikely to protect the public from harm or decrease drug use. As Wilson notes in his reply brief, "scientific evidence indicates that the incarceration of drug offenders does not have a significant deterrent effect on drug use." Roger K. Przybylski, *Correctional and Sentencing Reform for Drug Offenders: Findings on Selected Key Issues* (2009), http://www.ccjrc.org/wp-content/uploads/2016/02/Correctional_and_ Sentencing_Reform_ for_Drug_Offenders.pdf. It does, however, cost compared to the cost of incarcerating Wilson for 15 years, as incurred by the State, Wilson's family, and Wilson himself, his sentence is not reasonable.

¶ 30    The circuit court acknowledged that a 15-year sentence would not deter other offenders. But the State suggests the sentence was warranted because Wilson committed his crime within 1000 feet of a church. The State asserts the legislature included this provision in the statute "to protect anyone on the grounds of and/or attending churches, schools, etc., because these types of places are generally open to the public with relaxes security." But, again, statistics belie this assertion—as crime has not decreased in these areas. There is evidence, however, that "1,000 foot laws" have a racially disparate effect, given the proliferation of churches in predominantly black neighborhoods. An entire area can fall into a protected zone. Judith Greene, Kevin Pranis & Jason Ziedenberg, *Disparity by Design: How Drug-Free Zone Laws Impact Racial Disparity—and Fail to Protect Youth*, Just. Pol'y Inst., at 1 (Mar. 2006), http://www.justicepolicy.org/uploads/justicepolicy/documents/06-03_rep_disparitybydesign_ dp-jj-rd.pdf. Thus, these safe zone statutes do not serve their intended purpose and disproportionately affect minorities, thereby, raising hard questions about their continued efficacy.

¶ 31    Drug addiction is a multifaceted illness. And, as borne out by news headlines, whether it is heroin, methamphetamine, or any other nefarious substance, the use of drugs, particularly among our youth, continues to exact a massive human and economic toll on our society and

affect people of all backgrounds, ages, and incomes. Treating this illness with incarceration has not worked, as research by the United States Justice Department suggests, showing that two-thirds of drug offenders who leave state prison will be rearrested within three years and nearly half will return to prison either through a technical violation of their sentence—such as failing a drug test—or for a new offense. Doug McVay, Vincent Schiraldi, & Jason Ziedenberg, *Treatment or Incarceration?: National and State Findings on the Efficacy and Cost Savings of Drug Treatment Versus Imprisonment*, Just. Pol'y Inst., at 18 (Jan. 2004), http://www.justicepolicy.org/uploads/justicepolicy/documents/04-01_rep_mdtreatmentorinca rceration_ac-dp.pdf.

¶ 32    Although imprisoning offenders may seem like the best option in terms of public safety, it does not prevent people from cycling in and out of the prison system and returning to society with the same problems they had when they entered prison. *Id.* The approach we take in dealing with this illness—effective forms of treatment or continual and repeated incarceration—will determine whether many of its sufferers will be aided in becoming a useful, law-abiding citizen or will continue on this destructive cycle. It will also say a great deal about the value we place in saving lives and protecting our communities.

¶ 33    In 2002, in recognition of the "dramatic effect" the use and abuse of drugs has on the criminal justice system, the Illinois General Assembly adopted the Drug Court Treatment Act to "create specialized drug courts with the necessary flexibility to meet the drug problems in the State." 730 ILCS 166/5 (West 2014). Under the Act, a defendant charged with a Class 2 or greater felony, who has not been convicted of a "crime of violence" within the past 10 years, may be eligible for the drug court program if he or she meets certain requirements, including acknowledgement of his or her drug addiction and a demonstrated willingness to participate in a drug treatment program. If a defendant successfully completes a drug court program, the trial court "may dismiss the original charges against the defendant or successfully terminate the defendant's sentence or otherwise discharge him or her from any further proceedings against him or her in the original prosecution." 730 ILCS 166/35(b) (West 2014).

¶ 34    The Act further provides that if a defendant is not performing satisfactorily in or benefitting from the program, has engaged in criminal conduct, or otherwise violated the terms and conditions of the program the trial court "may impose reasonable sanctions under prior written agreement of the defendant, including but not limited to imprisonment or dismissal of the defendant from the program and the court may reinstate criminal proceedings against him." 730 ILCS 166/35(a) (West 2014).

¶ 35    Wilson's 15-year sentence does not reflect the degree of seriousness and the circumstances of his offense—selling a $20 bag of heroin to pay for his own drug habit—and will not serve the objective of restoring him to useful citizenship. Thus, absent a legitimate penological justification for the sentences, it is, by its nature, disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 71 (2010).

¶ 36    Wilson seems to be precisely the type of defendant with the type of problem that the drug court program was designed to address. His current and prior convictions have been nonviolent; he acknowledges his chronic heroin problem; and he appears willing to undergo treatment. Assuming he meets all of the eligibility requirements under the Act, his successful participation in that program is much more likely to further the goal of restoring him to useful citizenship than a 15-year prison sentence. Therefore, exercising our authority under Rule 615(b)(4), I would affirm the circuit court's judgment but reverse his sentence and remand to

the trial court to consider whether he is eligible for sentencing under the Drug Court Treatment Act. 730 ILCS 166/1 *et seq.* (West 2014).