2020 IL App (1st) 181221-U
No. 1-18-1221
Order filed August 31, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 17 CR 7050 |
| v. | ) | |
| | ) | Honorable James B. Linn, |
| ROBERT PEREZ, | ) | Judge, presiding. |
| | ) | |
| Defendant-Appellant. | ) | |

_____

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's eight-year prison sentence for domestic battery was not excessive.

¶ 2    Following a bench trial, defendant Robert Perez was found guilty of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2016)) and violation of an order of protection (VOOP) (720 ILCS 5/12-3.4) (West 2016)). He was sentenced, based on his criminal background, as a Class-X offender to a term of eight years for domestic battery and a concurrent three-year term for VOOP. On appeal,

defendant contends that his eight-year sentence for domestic battery was excessive.[1] For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with one count of domestic battery, one count of unlawful restraint (720 ILCS 5/10-3(a) (West 2016)) and one count of VOOP in connection with a January 2016 incident involving his ex-wife, Christina Perez (Christina).

¶ 4    At defendant's 2017 trial, Christina testified that her marriage to defendant had ended "three years ago." While they were still married, she obtained an order of protection against defendant which prohibited him from having any unlawful contact against her. A copy of the order of protection (People's Exhibit 1), which reflects that it was entered in case 12 CR 7864, was admitted into evidence. As of January 2016, defendant and Christina were divorced but living in the same residence in the 1100 block of South Monitor Avenue in Chicago. The order of protection was still in effect at that time.

¶ 5    On January 26, 2016, defendant took Christina's prescription hydrocodeine medication from her bedroom dresser. When Christina demanded that he give it back, defendant pushed her on the upper chest with his hands, causing her to fall. Defendant then looked at her "and laughed and left." A short time later, Christina heard a noise and saw that defendant was striking the back door to the residence with a hammer. Defendant also kicked the bottom of the door, causing damage. Christina then called the police. She identified photographs she had taken showing damage to the door, as well as the hammer that defendant used.

¶ 6    On cross-examination, Christina stated that she was 67 years old at the time of the incident. She testified, that even after the divorce, defendant "never left" the residence, but he was still

---

[1] Defendant raises no challenge to the imposition of the separate three-year sentence for VOOP.

living "downstairs in the basement." However she denied that she "allowed" him to live there, and stated that he "never had keys." Christina bruised her knee when she fell after defendant pushed her, but she did not photograph it. She denied that she needed any medical attention after the January 26, 2016 incident. On redirect examination, Christina testified that defendant was living in her house because "he never left me alone." She stated that she permitted him in the home because she was afraid and "didn't want to get beat up again."

¶ 7    The State introduced four certified statements of conviction for cases 12CR0786401; 98133459601; 00112732001; and 1014382140, which were admitted into evidence. The parties stipulated that as of January 26, 2016, defendant was on parole for case number 12 CR 7864, in which an order of protection had been issued. The State rested following the stipulation.

¶ 8    Defendant testified that he was 60 years old and was married to Christina from 1991 to 2015. He acknowledged that they had domestic problems, and that they were divorced in April 2015. After the divorce, defendant moved out of their residence and lived for a time with a friend. However, defendant moved back to the residence in December 2015 because Christina "kept on calling me and asking me to come back because she needed my help." Defendant explained that he was an "HVAC tech by trade" for 30 years and that Christina asked him to return to her residence because she wanted his help with tasks such as replacing the hot water tank and installing a new dishwasher. After he moved back into the residence, he stayed in a different room from Christina. He did not have keys to the residence, but Christina would "buzz [him] in."

¶ 9    On January 26, 2016, he came back from work around 9 p.m. and Christina would not let him in the house. After he "got inside," she demanded money from him; he told her that he would give her money as soon as he had some. According to defendant, Christina was angry that he was

not sleeping in the bedroom with her and she brought up some "past incidents," including one of his prior girlfriends. About 10 p.m., defendant went outside to throw out garbage; when he returned, the door was shut. He asked Christina to open the door because it was freezing, but she refused. He pushed the door and hit it with his shoulder. He entered the residence, changed clothes, and then went to stay at a friend's house. The next day, Christina called and asked him to return to her residence.

¶ 10    Defendant continued to live at the residence until his arrest in August 2016, after he was questioned at his parole office. He was arrested after Christina arrived at the parole office and told officers that he was scaring her. Defendant denied that he touched, hit or struck Christina on January 26, 2016.

¶ 11    On cross-examination, defendant acknowledged that Christina was the owner of the residence. He acknowledged that, as of January 2016, an order of protection prohibited him from harassing, harming or intimidating Christina, although it did not prohibit him from being at her residence. Defendant admitted that he damaged the door of the home to regain entry after he was locked out.

¶ 12    Defense counsel introduced a stipulation that, on August 29, 2016, Christina came to defendant's parole office to complain about defendant, after which he was arrested. The defense rested after the stipulation.

¶ 13    The court found defendant guilty of all three counts, noting that the unlawful restraint offense (count 2) would merge into the other counts. Defendant filed a motion for new trial and a supplemental motion for new trial, which were denied.

¶ 14    Defendant's presentence investigative report (PSI) reflected that he was born in 1957, and was married to Christina between 1991 and 2015. Defendant had two adult daughters from relationships with other women. Defendant denied childhood abuse or neglect, but reported he was a "confused child" and was negatively influenced by gangs. He became a member of the Latin Kings street gang at age 14 but left the gang in 1991. Defendant did not attend any high school but received his "G.E.D." while incarcerated in 1977. He completed a "Heating and Air Conditioning Certificate" in 1989 and was employed in the trade of appliance repair at the time of his arrest.

¶ 15    The PSI reflected a number of defendant's past convictions, including: a 1976 aggravated battery conviction for which he was sentenced to three years' imprisonment; a 1980 attempt murder conviction for which he was sentenced to 10 years' imprisonment; a 1989 burglary for which he was sentenced to two years' imprisonment; and two 1989 convictions for possession of a stolen motor vehicle, for which he was sentenced to concurrent terms of ten and seven years' imprisonment.

¶ 16    The PSI also reflected a number of defendant's violations of an order of protection entered in case 98133459601 between May 1998 and January 2001. Defendant also had a 1999 domestic battery conviction for which he was sentenced to 125 days in jail, as well as a 2013 domestic battery conviction for which he was sentenced to three years' imprisonment.

¶ 17    At sentencing, the State called two witnesses in aggravation. Officer Jonathan Janas testified that on July 15, 2014, he responded to the residence and detained defendant for violating a "no contact" order of protection. Chicago police officer Elizabeth Dawson testified that, on August 13, 2008, she responded to a domestic battery at the residence. Dawson identified a photograph that she took of Christina on that date, showing bruises on her right arm.

¶ 18    The State also published a victim impact statement by Christina, in which she stated that she met defendant in 1990. Over time, he became violent, started hitting her, and she would "go to work with black eyes." After she ended the relationship, he would not leave her alone and had "broken down [her] door three different times." Christina was in constant fear and expressed concern that defendant would "come looking for me" if he was released. Christina asked the court to give her justice and "peace of mind" by keeping defendant incarcerated as long as possible.

¶ 19    In mitigation, defense counsel called defendant's daughter, Melinda Buran. Buran testified that after the divorce from Christina, defendant moved elsewhere but Christina "would call him and tell him to come back." According to Buran, defendant "didn't want to be there" but he moved back into Christina's residence because he had nowhere else to go. Buran testified that Christina was "stalking" defendant by calling him and asking for help. Buran also testified that defendant contributed to Christina's household income.

¶ 20    In aggravation, the State noted that defendant had four felony convictions, including his 2013 domestic battery conviction from an incident which required Christina to have staples placed in her head after defendant struck her with a cell phone. The State also noted his three other felony convictions, for possession of stolen motor vehicle in 1989; attempt murder in 1980, and aggravated battery in 1976. The State further pointed out that he had "misdemeanor convictions notable because they are also domestic in nature" and, in addition to the convictions, he had "eleven additional domestic battery arrests, which were either not pursued or did not result in a conviction."

¶ 21  The State pointed out that defendant was subject to mandatory Class X sentencing. The State asked for a "lengthy" prison sentence, arguing that defendant was unable to leave Christina alone, despite having already served prison terms on other felonies.

¶ 22  In allocution, defendant stated: "I still stick to my innocence of this charge. Although I know I've done it in the past." Defendant acknowledged that he and Christina had "arguments" and "ups and downs" in their marriage but stated: "Those domestic batteries, she did call and was crying wolf, just so she could get her way." Defendant said that he "made a mistake going back home this time after she started calling me and calling me and calling me."

¶ 23  In announcing sentence, the court stated:

> "All right. The facts are what they are. I heard the testimony of the trial. The criminal history of Mr. Perez is extremely disturbing. He has a history of violence over many different decades, in and out of the penitentiary.
>
> He's looking at up to thirty years in the penitentiary in this case. I'm not sure the facts of this case require that. They require a little more than [the] minimum. The sentence is eight years in the penitentiary on the class two domestic battery. Three years in the penitentiary on the violation of the order of protection. Those sentences will run concurrently."

¶ 24  Defendant's motion to reconsider sentence was denied.

¶ 25  On appeal, defendant contends that his eight-year domestic battery sentence was excessive in light of the nature of the offenses and the mitigating evidence, including his close family ties, the "ability to turn his life around," and a consistent work history. He suggests that the court, in imposing sentence, unduly emphasized his criminal background, since his most serious

convictions occurred when he was a "young man influenced by neighborhood gangs in the 1970s and 1980s." He points out that he had "only one felony conviction [his 2013 domestic battery conviction] in the 30 years between that time and the instant case." He further contends that "almost all of his prior convictions were already factored into his sentence" to elevate his domestic battery conviction, ordinarily a Class A misdemeanor, to a Class 2 felony, and then to subject him to mandatory Class X sentencing. He otherwise claims that the court did not give adequate weight to the mitigating evidence of his rehabilitative potential, including that he obtained his GED and worked as an HVAC technician for 30 years. On those grounds, he asks that we reduce his eight-year term to the six-year minimum for a Class X offense, or that we remand for resentencing.

¶ 26    In setting forth this argument, defendant recognizes that trial counsel did not adequately preserve this issue for review because counsel made only a non-specific, oral motion to reconsider sentence. See *People v. Hillier*, 237 Ill.2d 539, 545 (2010) (to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required). Nonetheless, he urges that we review the issue under the plain-error doctrine, which "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Alternatively, he contends that trial counsel's failure to preserve the issue of whether his sentence was excessive constitutes ineffective assistance of counsel.

¶ 27    To obtain relief under the plain-error doctrine, "a defendant must first show that a clear or obvious error occurred. [Citation.] In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. [Citation.]" *Hillier*, 237 Ill.2d at 545.

Defendant contends that either prong of plain-error doctrine applies. However, "[t]he first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613; see also *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005) ("Before we may apply either prong of the plain error doctrine * * * there must be plain error."). Thus, we first consider whether the trial court erred, *i.e.*, whether it abused its discretion in imposing the eight-year sentence in this case.

¶ 28    The State responds that there was no error, and thus no plain error. The State contends that the trial court did not abuse its discretion in imposing a sentence two years above the minimum. We agree with the State.

¶ 29    Under the Illinois Constitution, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art I, § 11. "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. [Citations.] A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). "The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 30    "A reviewing court may only reduce a sentence under Illinois Supreme Court Rule 615 when the record shows that the trial court abused its discretion. [Citation.]" *People v. Busse*, 2016

IL App (1st) 142941, ¶ 20. "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id*.

¶ 31    Given the record in this case, we cannot conclude that defendant's domestic battery sentence was an abuse of discretion. First, the eight-year sentence was well within statutory limits and thus is "presumed proper." *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 12. Although domestic battery is ordinarily a Class A misdemeanor, defendant's offense was elevated to a Class 2 felony because he had four prior domestic battery convictions, as evidenced by the four certified statements of conviction admitted at trial.[2] 720 ILCS 5/12-3.2(b) (West 2016) ("Domestic battery is a Class 2 felony if the defendant had 4 or more prior convictions under this Code for domestic battery * * * ."). A Class 2 felony is ordinarily punishable by a sentence between three and seven years' imprisonment. 720 ILCS 5/5-4.5-35(a) (West 2016). However, due to defendant's additional prior felony convictions, he was subject to mandatory Class X sentencing. 730 ILCS 5/5-4.5-95(b) (West 2016) ("When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted * * * of an offense that contains the same elements as an offense now * * * classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender."). In turn, the applicable sentencing range was a

---

    [2] Notably, the People's exhibits reference cases 12 CR0786401; 98133459601; 00112732001; and 1043821401. The PSI lists only two of these four prior domestic battery convictions (12CR0786401 and 98133459601) but does not appear to reference the domestic battery convictions in cases 00112732001 or 1043821401. However, defendant's brief concedes that he "had four prior convictions for domestic battery" elevating his domestic battery offense in this case to a Class 2 offense.

minimum of 6 and a maximum of 30 years. 730 ILCS 5/5-4.5-25(a) (West 2016) (Class X felony punishable by a term of "not less than 6 years and not more than 30 years.").

¶ 32    Defendant's sentence of eight years was well within this applicable sentencing range; indeed, it was only two years greater than the minimum and 22 years less than the maximum. In turn, we cannot conclude that it is excessive unless it is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Busse*, 2016 IL App (1st) 142941, ¶ 20. On the record before us, we cannot reach that conclusion.

¶ 33    The thrust of defendant's argument is that the trial court did "not give adequate weight to the mitigating evidence" compared to the seriousness of the January 2016 incident, which was "based on brief physical contact" to Christina.  He contends it was an abuse of discretion to give him more than the six-year minimum in light of his potential for rehabilitation. Defendant suggests that the court over-emphasized his criminal history in remarking that he had a "history of violence over many different decades." He acknowledges he was incarcerated for several felonies he committed as a young man but points out that he acquired education and training that enabled him to work as an HVAC technician and support his family. He claims that he "demonstrated his potential for rehabilitation early on" by obtaining his GED in 1977, studying heating and air conditioning trade in the late 1980s, then using his education "to step away from the criminal activities that had dominated his youth." He admits that he committed prior acts of domestic battery against Christina and violated orders of protection but emphasizes that he provided her with financial support even after their divorce. He also notes that he maintained a close relationship with Buran, his daughter from another relationship. Based on his rehabilitative potential, he contends that the eight-year sentence was excessive.

¶ 34     In arguing that the court unduly emphasized his prior criminal history and failed to properly account for mitigating factors, defendant essentially invites us to reweigh the various aggravating and mitigating factors presented to the trial court and arrive at a different sentence. This we cannot do, even if we would have weighed these factors differently than the trial court. *Alexander*, 239 Ill. 2d at 214-15; *Stacey*, 193 Ill. 2d at 209. Here, there is no dispute that defendant had a lengthy criminal history over several decades, which the trial court was entitled to rely upon to impose more than the minimum sentence. See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13 (defendant's " 'criminal history alone' " may warrant a sentence " 'substantially above the minimum' " (quoting *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009))). We acknowledge defendant's argument that his earliest crimes were a product of his gang-influenced youth, before he obtained his GED and began a long career. Nonetheless, even disregarding his convictions from the 1970s and 1980s, he still had ample recent criminal history related to domestic violence, including four domestic battery convictions. Further, at sentencing the State presented aggravating evidence of additional incidents in 2008 and 2014. Indeed, the record reflects that he committed numerous offenses against Christina, many years after he claims to have "turned his life around" and demonstrated rehabilitative potential. The record makes clear that "defendant was not deterred by previous, more lenient sentences" for his conduct against Christina, including the three-year sentence for his most recent domestic battery conviction. *Wilson*, 2016 IL App (1st) 141063, ¶ 13. The court could consider this history in electing to impose a sentence two years above the minimum of the applicable 6-to-30-year sentencing range.

¶ 35     Moreover, we note that "[t]he seriousness of an offense, and not mitigating evidence, is the most important factor in sentencing. [Citation.]" *Wilson*, 2016 IL App (1st) 141063, ¶ 11.

Defendant does not dispute that the offenses in this case were serious. Although he notes that the January 26, 2016 incident involved only "brief physical contact," defendant elsewhere explicitly admits that his "offenses were undoubtedly serious and had a significant impact on [Christina], as her victim impact statement demonstrated." The trial court thus had discretion to impose more than the minimum sentence, notwithstanding mitigating factors. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 ("Because the most important sentencing factor is the seriousness of the offense, the court is not required to give greater weight to mitigating factors than to the seriousness of the offense, nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence. [Citations.]").

¶ 36    Further, although the trial court did not explicitly discuss mitigating factors or rehabilitative potential in announcing sentence, nothing in the record rebuts the presumption that the court did, in fact, consider them. See *People v. Brazziel,* 406 Ill. App. 3d 412, 434 (2010) ("it is presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it; and the burden is on the defendant to affirmatively show the contrary."); *Wilson*, 2016 IL App (1st) 141063, ¶ 11 (the trial court is presumed to consider any mitigation evidence presented "but has no obligation to recite and assign a value to each factor [citation]."). We find nothing to indicate that the court disregarded relevant factors or abused its discretion. To the contrary, the court exercised its discretion when it recognized that, although defendant faced "up to thirty years," it believed that he deserved only a "little more than [the] minimum" and imposed an eight-year term.

¶ 37    In sum, we cannot say that the trial court abused its discretion in sentencing defendant, and we reject defendant's claim that his eight-year sentence was excessive. As there was no error in

sentencing, we need not additionally discuss whether either prong of plain error review applies. *Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 38    Finally, given our conclusion, we reject defendant's claim that his trial counsel was ineffective for failing to properly preserve an excessiveness challenge to his sentence. A defendant alleging ineffective assistance of counsel must prove prejudice, such that "absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Evans*, 209 Ill.2d 194, 219-20 (2004) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). As we have determined that the trial court did not abuse its discretion in imposing an eight-year sentence, defendant cannot demonstrate any reasonable probability that the result would have been different, even had his trial counsel properly preserved the issue. See, e.g., *People v. Brown*, 2017 IL App (1st) 142877, ¶ 66 (counsel not ineffective for failing to file motion to reconsider sentence where there was no reasonable probability that the sentence would have been different even if motion had been filed). As defendant cannot demonstrate prejudice, his claim of ineffective assistance is without merit.

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40    Affirmed.