**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 210100-U

NO. 4-21-0100

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
January 30, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRANDON COOL, | ) | No. 17CF150 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) The evidence was sufficient to convict defendant of aggravated domestic battery and (2) the trial court did not abuse its discretion in its consideration of the sentencing factors.

¶ 2    A Livingston County jury found defendant, Brandon Cool, guilty of one count of aggravated domestic battery (great bodily harm) (720 ILCS 5/12-3.3(a) (West 2016)), for which the trial court sentenced him to 12 years' imprisonment. Defendant filed a posttrial motion and a motion to reconsider his sentence.

¶ 3    Defendant raises three issues. First, he claims the State failed to prove he committed aggravated domestic battery by causing great bodily harm to the victim. Second, defendant posits the trial court committed error in sentencing by considering, as an aggravating factor, other uncharged incidents of abuse of the victim by defendant. Third, defendant alleges the court failed

to consider at sentencing, as mitigation, the impact imprisonment would have on defendant's family.

¶ 4    We affirm the judgment of the trial court.

¶ 5                          I. BACKGROUND

¶ 6    In May 2017, defendant was charged with aggravated domestic battery based on strangulation (720 ILCS 5/12-3.3(a-5) (West 2016)) and aggravated domestic battery based on great bodily harm (720 ILCS 5/12-3.3(a) (West 2016)). The matter proceeded to a jury trial on both charges, and the jury found defendant guilty of the latter charge, based on causing great bodily harm to Stacy Kindelberger (Stacy). The State presented three witnesses between its case-in-chief and rebuttal, and defendant presented one during his case. Their testimony relevant to the issues herein we summarize below.

¶ 7    Stacy testified she had been in a relationship with defendant, and at one time lived with defendant in the home he shared with his mother. She moved from that residence after defendant "assaulted" her (she repeated this account during cross-examination). Thereafter, on May 6, 2017, Stacy and defendant were "hanging out" and "partying" with another couple, first at the local races and then at Stacy's home. Defendant started an argument with Stacy over the attention he alleged she was giving the other male present, and his belief others had consumed more of their drugs than he had. The other couple left Stacy's home around 10 p.m. because defendant "made them uncomfortable." Defendant, however, stayed and kept arguing with Stacy until approximately 3 a.m. At that time, Stacy told defendant to leave because she "was tired of it."

¶ 8    While defendant was leaving, Stacy described, he slammed the exterior door into her face and punched her in the face. She did not recall everything that occurred because it

happened so quickly but related the force of this contact caused her to lose her balance, hit the wall across the room from the door, and fall to the floor. Defendant then sat on Stacy, grabbed her throat, and choked her with one hand while punching her face with the other. She "started bucking like a horse" and was "literally choking and gagging, spitting up blood everywhere." During the attack, defendant also "stomped" on Stacy's head, face, neck, arm, and side. She testified defendant's beating caused her to go "in and out of consciousness," and after one such episode, she noticed defendant had left her home.

¶ 9        Defendant took Stacy's phone when he left, which she knew because he answered the call she made from her SafeLink phone. She also used the latter to call the police, and shortly thereafter, Officer Derek Schumm arrived. Upon his arrival, Stacy related she was covered in blood, her nose was bleeding, and she was still choking on that blood. She went to the hospital, where it took personnel nearly "four and a half hours" to remove "the blood that was caked" on her face so they could determine the extent of her injuries.

¶ 10        Stacy identified a photograph of the floor where defendant "pinned," punched, and choked her, which depicted blood smeared on the floor and splattered on the wall. She also identified several photographs of her face before and after hospital personnel removed the blood. The trial court admitted the foregoing exhibits, as well as several others evidencing bruising on Stacy in several places. The State published to the jury the image of the floor and another image depicting Stacy's bloodied face.

¶ 11        At various times during her testimony, Stacy described her injuries as: (1) a broken or caved-in right sinus cavity; (2) the loss of peripheral vision in her right eye; (3) the loss of hearing in her right ear; and (4) being "completely bruised and swollen and beaten," including about her face, neck, and head.

¶ 12        Derek Schumm related he was the police officer for the City of Pontiac dispatched to Stacy's home. When Stacy answered the door, he "immediately observed" injuries to her face and neck, evidenced by blood and bruising. He observed "a good amount of blood on the floor as well as splattered on the kitchen wall." Based on what Stacy told him, Schumm identified defendant as a suspect and called defendant's cell phone, but he did not answer. Schumm was aware other officers tried to locate defendant but were unsuccessful. Schumm summoned an ambulance for Stacy. Though Stacy was upset and in pain, Schumm was not concerned about her inability to recall and describe the events of that night.

¶ 13        Defendant's mother, Sheila Cool, testified on his behalf. She related defendant arrived home at 11 p.m. or 11:30 p.m. on the night Stacy was injured and did not leave until around 7 a.m. the next day, when he boarded a train to St. Louis to help her nephew move. Cool testified she was a light sleeper and, at the time, she had three dogs who would have alerted if anyone entered or exited the home.

¶ 14        For its rebuttal case, the State proffered Johnathan Marion, a Pontiac police officer. Marion testified on the night Stacy was beaten, he learned defendant was a suspect and, based on previous contacts with defendant, he knew where defendant lived. Marion and another officer went to the home defendant shared with his mother. Marion knocked "loudly" for around 10 minutes. No one answered the door, and Marion heard no sound from inside the home other than possibly the sound of a dog.

¶ 15        The jury found defendant guilty of aggravated domestic battery for causing Stacy great bodily harm, and not guilty of the same offense based on strangulation.

¶ 16        As to defendant's criminal history, the presentence investigation report (PSI) disclosed the following adjudications: (1) two juvenile matters in which defendant had admitted

the allegations of battery and agreed to informal periods of supervision, which were later terminated unsuccessfully; (2) two theft convictions; (3) two criminal-damage-to-property convictions; (4) two possession-of-drug-paraphernalia convictions; (5) a burglary conviction for which his probation was revoked and he was sentenced to four years' incarceration; (6) a driving-under-the-influence (DUI) conviction for which he was sentenced to incarceration in the county jail; and (7) another DUI conviction for which he was sentenced to three years' imprisonment. The PSI also disclosed several pending matters, including a charge for violating an order of protection (OP) based on the violations of the conditions of release by absconding, the removal of the SCRAM (Secure Continuous Remote Alcohol Monitoring) bracelet, and having a large delinquent account balance.

¶ 17        Stacy's victim impact statement described their "abusive relationship" and defendant's past acts of abuse toward her, including: (1) pushing her through walls; (2) throwing televisions at her; (3) breaking her phone so she could not call for help; (4) tearing the electrical box out of her home; (5) putting his head through a glass window; and (6) violating an OP 10 minutes after his release from custody.

¶ 18        At the sentencing hearing, the trial court noted the sources of information it considered included the evidence at trial, the PSI, the information offered by the parties in mitigation and aggravation, defendant's allocution, and the victim impact statement. In addition, the court discussed (1) the need for deterrence, (2) the possibility for defendant's rehabilitation, (3) the seriousness of defendant's conduct, (4) defendant's unwillingness to obey the law or accept responsibility, (5) the need for punishment, and (6) the effect incarceration would have on defendant's family.

¶ 19        As to the seriousness of defendant's conduct, the trial court noted, "[s]hort of killing her," it was "not too sure what else could have happened." The "really horrendous beating" defendant inflicted led to "very, very serious injuries," producing the "worst pictures" the court had ever viewed of a domestic battery victim. The court noted defendant's extensive criminal history and that, despite prior imprisonment, he had done nothing to alter his conduct. Defendant's history also was indicative of his poor rehabilitative potential and supported the need for deterrence. The court also noted defendant was "on the run" for over two years, during which period he took no steps to improve himself or address the underlying causes of his past actions. Relative to rehabilitation, the court mentioned in passing defendant's conduct was "not a one time incident." Finally, the court noted the fact defendant had a young child was unavailing as mitigation at all, given he had the child during the period he had "absconded," as described above.

¶ 20        The trial court sentenced defendant to 12 years of imprisonment. Defendant filed a posttrial motion and a motion to reconsider his sentence, both of which the court denied.

¶ 21        This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23              A. Sufficiency of the Evidence and Standard of Review

¶ 24        We will not reverse a conviction on appeal "for insufficient evidence unless the evidence is so improbable or unsatisfactory that a reasonable doubt remains as to the defendant's guilt." *People v. Harris*, 2018 IL 121932, ¶ 26. We view the evidence in the light most favorable to the State and consider whether any "rational trier of fact" could have concluded the evidence established the crime's essential elements beyond a reasonable doubt. *Id.* We do not retry the accused, and we draw any reasonable inference in favor of the State. *Id.* Throughout, the fact finder's responsibility is to weigh the evidence, resolve conflicts within the evidence, and draw

reasonable inferences therefrom. We will not substitute our judgment "for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *People v. Brown*, 2013 IL 114196, ¶ 48.

¶ 25                    B. Aggravated Domestic Battery Based on Great Bodily Harm

¶ 26            Defendant was charged and convicted of "committing a domestic battery" while "knowingly caus[ing] great bodily harm" pursuant to section 12-3.3(a) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.3(a) (West 2016)). He argues the State failed to prove defendant caused "great bodily harm."

¶ 27            There is no precise definition of what constitutes "great bodily harm," but such injury is necessarily greater than what could support a simple battery and depends on the degree of injury. *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 69. Whether a victim's injuries meet this standard is for the fact finder to determine. *Id.* We recognize a beating can produce injuries qualifying as "great bodily harm" even when those injuries are not permanent and do not linger. *Id.* ¶ 70.

¶ 28            In *Kinnerson*, the defendant beat the victim, seriously injuring her face. *Id.* ¶ 71. She reported to the 911 operator the defendant had beaten her, blackening both of her eyes, splitting her lip, and causing her to urinate on herself. *Id.* A paramedic who treated her described her swollen face and eyes, deformed nose, and bloodied mouth. *Id.* The State also presented photographs of the injuries. *Id.* We found "a rationale [*sic*] trier of fact could have found defendant inflicted great bodily harm." *Id.* ¶ 72. Thus, the testimony and photographs comprised evidence sufficient to support the defendant's conviction pursuant to section 12-3.3(a) of the Criminal Code, having provided detail about the severity of the beating and the scope of the injuries. *Id.* ¶ 74.

¶ 29        Herein, Stacy described defendant's brutal attack and the nature and extent of her injuries. She testified how defendant slammed the door into her face, punched her in the face, knocked her down, then choked and punched her some more. Defendant persisted, Stacy testified, as she was choking, gagging, and spitting up blood. She described how defendant "stomped" all over her face and torso, and caused her to lose consciousness. She noted it took hospital personnel over four hours to clean the dried blood off her face. As well, Stacy detailed the injuries about her head and face, and the partial loss of her ability to hear and see. Finally, Stacy identified photographs of her injuries and the scene of the attack, showing blood spattered on both the floor and wall.

¶ 30        Officer Schumm's testimony supported Stacy's descriptions. He noted he "immediately observed" Stacy's bloodied and bruised head and face. He also described the "good amount of blood on the floor as well as splattered on the kitchen wall."

¶ 31        Based on the foregoing, there was sufficient evidence to establish the severe nature of defendant's attack, and the severe type and breadth of Stacy's injuries. Thus, a rational trier of fact could have found defendant caused "great bodily harm" to Stacy. Such determination was the province of the jury, and we will not second-guess its judgment on the sufficiency or credibility of the evidence.

¶ 32        We reject defendant's assertion *Kinnerson* required the State to present a medical expert witness to prove "great bodily harm." *Kinnerson* does not suggest such a requirement, as the "medical" testimony relative to the injuries was from a paramedic describing the victim's appearance. *Kinnerson*, 2020 IL App (4th) 170650, ¶ 15. An observation anyone could have made of bruising, swelling, and deformity is simply not evidence requiring medical expertise.

¶ 33    Therefore, we find the evidence was sufficient to support defendant's conviction for aggravated domestic battery based on great bodily harm.

¶ 34                    C. Sentencing Factors and Standard of Review

¶ 35    Trial courts have broad discretionary sentencing powers, and we will not reverse a sentence absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). We give such deference because the trial courts are usually in a better position to determine an appropriate sentence, having the opportunity to assess the defendant's characteristics, including credibility and demeanor. *Id.* at 209. We do not substitute our judgment for that of the trial court solely because we would weigh the sentencing factors differently. *Id.* A trial court has discretion to conclude a sentencing factor deserves little weight, or that it is aggravating. *People v. Shatner*, 174 Ill. 2d 133, 160 (1996).

¶ 36    The sentencing court is not required to articulate each factor it relies on when imposing its sentence. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. We presume the court has considered all mitigation evidence and other factors relevant to sentencing. *Id.* To rebut this presumption, the defendant must demonstrate affirmatively the trial court did not consider such factors. *Id.*

¶ 37                    D. Other Allegations of Abuse

¶ 38    Defendant argues the trial court abused its discretion at sentencing by considering as an aggravating factor Stacy's statements about defendant's prior abuse. He claims her statements are not credible, but he does not claim they were not relevant. Stacy referenced a prior "assault" during her testimony, and described several other instances in her victim impact statement.

¶ 39    A trial court's wide discretion at sentencing includes the power to consider various types of information so long as it is relevant and reliable. *People v. Williams*, 149 Ill. 2d 467, 490 (1992).

¶ 40    We disagree the record demonstrates the trial court relied on the other allegations of abuse. The court referenced the prior abuse, but we do not believe the context suggests the court considered it as an aggravating factor. Instead, the record demonstrates the court relied on numerous other factors, such as the manner in which defendant committed the offense, his prior criminal history, and his repeated failures to take steps to become a law-abiding member of society. See, *e.g.*, *People v. Ward*, 154 Ill. 2d 272, 330-31 (1992). In short, the court appropriately concentrated on defendant's record, character, and the nature of the offense.

¶ 41    However, even if the trial court relied on the prior abuse allegations, it would have been proper. As to the statements at trial, contrary to defendant's argument, he did have an opportunity to cross-examine Stacy about at least one of the statements. In fact, the record shows defendant confirmed Stacy alleged another incident of defendant's abuse during his cross-examination of her, but he did not follow-up to obtain any additional detail. We recognize this may have been a strategic decision so as not to draw the jury's attention, but nevertheless he did have the opportunity. As well, the court and jury would have had the ability to assess Stacy's credibility, and we will not substitute our judgment for theirs.

¶ 42    As to the descriptions of prior abuse in the victim impact statement, it would have been well within the trial court's discretion to consider those as aggravating factors. *People v. Hestand*, 362 Ill. App. 3d 272, 281 (2005).

¶ 43    Thus, the trial court did not abuse its discretion by considering other allegations regarding defendant's prior abuse of Stacy.

¶ 44                    E. Impact of Incarceration on Defendant's Family

¶ 45        Defendant posits the trial court failed to consider the impact his imprisonment would have on his family, specifically his sons, a 14-year-old and a 30-month-old. He argues section 5-5-3.1(a)(18) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.1(a)(18) (West 2016)) required the court to consider the negative impact his incarceration might have on his children.

¶ 46        Notably, the trial court specifically mentioned defendant's young child and specifically concluded the child was not a mitigating factor in defendant's case. In short, the court considered the negative effect defendant's imprisonment would have on his family, but determined the factor carried little weight as mitigation. It is such consideration and assessment that is required by section 5-5-3.1(a)(18) of the Unified Code, which provides a sentencing court with factors relative to a parent's absence "to be considered in assessing this factor in mitigation." *Id.* In other words, a sentencing court is required to consider the impact of incarceration, but is not required to give it any particular weight.

¶ 47        The foregoing is consistent with the wide discretion afforded sentencing courts to consider various types of information and determine what weight to place on each factor. As well, we presume the trial court considered all factors in mitigation, as defendant has not affirmatively demonstrated otherwise.

¶ 48        Thus, the trial court did not commit error by failing to consider the impact of defendant's incarceration on his family.

¶ 49                             III. CONCLUSION

¶ 50        For the foregoing reasons, we affirm the trial court's judgment.

¶ 51        Affirmed.