**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190328-U

Order filed February 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0238 Circuit No. 14-CF-446 |
| JORDAN R. WALKER, | ) ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The circuit court did not err in resentencing defendant following the revocation of defendant's probation.

¶ 2     Defendant, Jordan R. Walker, appeals from his conviction for aggravated discharge of a firearm. Defendant argues the Peoria County circuit court failed to consider his original offense and improperly considered his character flaws when it resentenced him following the revocation of his probation. We affirm.

¶ 3　　　　　　　　　　　　　　　I. BACKGROUND

¶ 4　　　　　The State charged defendant with two counts of aggravated battery (720 ILCS 5/12-3.05 (e)(1) (West 2014)) and two counts of aggravated discharge of a firearm (*id.* § 24-1.2(a)(1). On March 23, 2015, the court accepted defendant's guilty plea to one count of aggravated discharge of a firearm. Pursuant to the parties' plea agreement, the court sentenced defendant to 48 months' probation.

¶ 5　　　　　Approximately two years after the plea, the State filed a petition to revoke defendant's probation. The petition alleged that defendant had committed the felony offense of unlawful possession of a weapon by a felon (UPWF). Following a hearing, the court found that defendant had violated his probation. The court ordered a presentence investigation (PSI) in preparation for sentencing.

¶ 6　　　　　The PSI included letters from both defendant and his adoptive mother, Mary Walker. Defendant indicated that a ride request precipitated the offense that led to the revocation of his probation. Defendant continued,

　　　　　　　"I am not accusing, nor am I pointing my finger, towards anyone but myself. For I have acknowledged that my lack of judgement [*sic*] has caused me to face unwanted consequences. *** My choosing of associates to surround myself with, for whatever reason, was selfish on my behalf. *** I no [*sic*] I can do better which I have been doing. As you can see, I've completed a good amount of time on my, probation while I was out therefore I feel that I can truly better my life by enrolling myself in school to get my GED and further my education beyond that. Also, by getting a job to support my family. I am asking for the Court and you,

your honorable, to be leniency [*sic*] on me and help me accomplish these goals. I am willing to attend any and every program that the court offers."

In her letter, Walker said that defendant was a caring father to his three daughters.

¶ 7 The PSI indicated that defendant resided with his adoptive sister for several years prior to his present incarceration. Before living with his sister, he lived with Walker. Defendant "counts on [his sister] for just about everything," including financial assistance. Defendant also received LINK benefits. Defendant reported that he had only two children, L.J., five years old, and M.W., four years old. Defendant did not know where L. J.'s mother, Alexandra Johnson lived. Defendant spent most of his time with his daughter, M.W., and enjoyed babysitting her. Defendant did not have a relationship with his biological parents, as he was removed from their home and placed in foster care at five years old. Defendant had committed several felony offenses when he was a juvenile. The PSI also listed defendant's original offense, aggravated discharge of a firearm, and the UPWF offense that led to the revocation of his probation. Regarding the UPWF offense, defendant indicated that he "didn't feel like he committed a crime. *** he is innocent, all he did was get a ride from this person." The PSI also indicated that defendant had not: been in the military, held gainful employment, or obtained a driver's license.

¶ 8 At the beginning of the sentencing hearing, the court noted that defendant was originally placed on probation "for the offense of aggravated discharge of a firearm." During the hearing, defense counsel called Felicity West, who shared the minor child M.W. with defendant to testify. When M.W. was not at school, defendant cared for M.W. at West's residence. Defendant also had a minor child, L.J., with Johnson. Defendant watched L.J. on the weekends. Defendant did not work, go to school, or reside with West. Defendant purchased items to help with the childcare. The court inquired:

3

> "THE COURT: What does [defendant] do? What does he do with the day?
>
> [WEST]: I don't know. He just—
>
> THE COURT: Like if he went to jail, what would I keep him from doing? What would he be kept from doing?"

The court asked where West lived and determined that West had not resided at the address that defendant listed in the PSI for approximately three years. The court stated,

> "So the PSI that was filed on October 30, 2017, of which the defendant provided information for, said that [M.W.] is four years old and lives with her mother in West Peoria. This is the place where [defendant] spends all day?
>
> Nevermind. I don't even know if he's ever been to her place."

¶ 9 Following the testimony, counsel argued that defendant had two children with whom he "spen[t] a great deal of time with." The court interjected,

> "Really? Let me ask you about that. Because it says in the PSI, 'The defendant reported he has two children. [L.J.] is five years old and lives with her mom *** Johnson. The defendant reported he does not know where [Johnson] is currently living.'
>
> Does he spend time with her or not?"

Counsel responded that defendant did not know where L.J. lived at the time of the PSI interview. The following colloquy occurred:

> "[THE COURT]: It seems like [defendant] had plenty of time to learn it. He's not working, never been in the military, doesn't have medical issues. ***
>
> But you know, I know you're doing the best you can, but go ahead.

¶ 10     Before defendant's statement in allocution, the court told defendant that "somebody needs to be honest" with him and that "[i]t doesn't look good." The court then asked defendant:

> "[THE COURT]: Do you work?
>
> [DEFENDANT]: No.
>
> [THE COURT]: No. Do you do anything that contributes to society during the day other than get up? No. Do you have prior convictions?
>
> [DEFENDANT]: Yes.
>
> [THE COURT]: Yes. Have you been caught with a gun before? Yes. Have you acknowledged that you're guilty of this offense? No."

¶ 11     The court referenced defendant's PSI and noted that defendant told the interviewer that he was innocent of the probation violation and did not feel like he committed a crime. The court stated that defendant did not hold gainful employment, and instead used money from the government and help from his sister. The court commented on defendant's refusal to take responsibility for his actions noting that defendant blamed other people for his situation.

¶ 12     The court continued by reading from defendant's letter and commenting

> " 'I'm willing to attend any and every program that the Court offers.' No, you're not, because you didn't complete probation. You couldn't get by without having a gun. We've had this conversation ***. I was the guy who felt sorry for you. I was the guy who talked about you being small and little, because I am.
>
> But when I'm looking at what I'm looking at, and I realize I say these things after you normally say something, but I'm actually saying these so to give you a chance to respond, and like a human being, with words and maybe some plausible explanation, explain some of this. But I'll say it again: never had a

5

driver's license, never been in the military, never held a meaningful job, never paid child support for your children, never lived on your own and paid rent."

When defendant asked for one more chance, the court responded,

"Okay. You know what really unnerves me ***? This part. And I'm not even going to wing it. I'm going to read it. I'm not going to read all of your priors."

The court continued,

" 'The defendant said he has never really met his father.' And I give you some empathy for that. And now look at what you're going to do to your daughters."

\*\*\*

\*\*\* That's going to be them, because I'm not going to give you probation. I want to, but you're begging me not to. Because you come in here with a gun before and a gun now. \*\*\*

\*\*\*

\*\*\* You are making me choose, because you've chosen that guns are for you. And I told you when you were here before, I cannot tolerate that.

\*\*\*

\*\*\* You know that I was born here, I was raised here, and I'm not going to do to Peorians what I think you would eventually do.

\*\*\*

\*\*\* You would kill one of them. \*\*\*

And my job primarily is to the citizens of Peoria, before you, to help them stay safe and be safe. And they would think that I've lost my mind and that I fell for it again, that a little guy would come into court and say he's a positive role

6

model to his daughters. Well, you may be, but to the rest of Peoria, you've ruined it."

Defendant then confirmed that he had three children. The court said, "You've fathered three children, none of which you pay child support for. None of which you pay for. *** So three more people inhabit the planet while you're carrying guns."

¶ 13    During the State's argument, the court inquired whether defendant was being sentenced on the original offense, aggravated discharge of a firearm, or the probation violation, UPWF. The State indicated that defendant was being resentenced for aggravated discharge of a firearm. The court stated, "[r]ight. In other words, the sentencing range is a Class 1. *** It's probation and four to 15 [years' imprisonment]."

¶ 14    In its sentence pronouncement, the court stated,

> "I've considered the [PSI], the evidence and arguments of the lawyers, the statement of allocution, and even the colloquy between me and the defendant. And I have considered the statutory matters in aggravation and mitigation and the history and character of the defendant. And I've given due regard for the circumstances and nature of the offense."

The court resentenced defendant to 11 years' imprisonment with day-for-day credit to apply.

¶ 15    On November 30, 2017, counsel filed a motion asking the court to reconsider defendant's sentence. The motion argued defendant's sentence was excessive and the court failed to consider certain factors in mitigation. At the hearing, counsel informed the court that the Illinois Department of Corrections did not apply day-for-day credit to defendant's sentence, as the court ordered. Counsel made an oral motion to reduce defendant's sentence to six years and five months' imprisonment to accurately reflect the court's intended sentence. The court granted

7

defendant's oral motion and reduced defendant's sentence to six years and five months' imprisonment, to be served at 85%. The court otherwise denied defendant's motion to reconsider. Defendant appeals.

¶ 16                                    II. ANALYSIS

¶ 17        Defendant argues that the circuit court failed to consider his original sentence and improperly considered his character flaws when resentencing him following the revocation of his probation. Defendant concedes that he did not preserve this issue for appellate review as he did not object during the resentencing hearing or raise the issue in a posttrial motion, but he argues this sentencing error is a reversible plain error. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for appellate review, a defendant must object to it at trial and raise it in a posttrial motion).

¶ 18        When a defendant forfeits appellate review of a claim of error, we may only consider the claim when the defendant establishes that a plain error occurred. See Ill. S. Ct. R. 615(a). "To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

> "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. [Citation.] Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion. [Citation.] If the defendant fails to meet his burden, the procedural default will be honored." *Id.*

We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000).

¶ 19 The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. When resentencing for a probation violation, the sentencing court must consider the underlying offense. *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009). During a sentencing hearing, "a court may inquire into a defendant's 'general moral character, habits, social environment, abnormal tendencies, age, natural inclination or aversion to commit crime, and stimuli motivating his conduct, in addition to his family life, occupation, and criminal record.' " *Id.* at 873 (quoting *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007)). The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). "[A] defendant 'must make an affirmative showing that the sentencing court did not consider the relevant factors.' " *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11 (quoting *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38).

¶ 20 We note that defendant's sentence of six years and five months' imprisonment for aggravated discharge of a firearm is within the statutory range of 4 to 15 years' imprisonment. See 720 ILCS 5/24-1.2(a)(1) (West 2014); 730 ILCS 5/5-4.5-30 (West 2014). Therefore, defendant's sentence is presumptively valid, and defendant bears the burden to rebut this presumption. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 13.

¶ 21 Moreover, the record establishes that the court considered the underlying offense during resentencing. The court was aware of the offense as it had both accepted defendant's guilty plea

9

and received his PSI. Also, the court acknowledged defendant's original sentence prior to beginning the sentencing hearing, repeatedly referenced the nature of the charge during the sentencing hearing and confirmed that defendant was being resentenced on the original charge and the applicable statutory sentencing range prior to imposing defendant's sentence.

¶ 22   The record also establishes that the court properly weighed the factors in aggravation and mitigation and based its sentence determination on its observations of defendant's character, a desire to protect society, and the minimal likelihood of defendant's rehabilitation outside of prison. *Supra* ¶¶ 11-12, 14; see also *Kolzow*, 301 Ill. App. 3d at 8; *People v. Fern*, 189 Ill. 2d 48, 53 (1999). Before resentencing defendant, the court reasonably inquired into defendant's general moral character, habits, social environment, natural inclination or aversion to commit crime, family life, occupation, and criminal record. See *Varghese*, 391 Ill. App. 3d at 873. Finally, defendant cites nothing in the record that affirmatively shows that the court dismissed defendant's original conduct or failed to consider relevant factors in aggravation and mitigation. See *Wilson*, 2016 IL App (1st) 141063, ¶ 11. We conclude that the court did not abuse its discretion in imposing the defendant's sentence.

¶ 23                                   III. CONCLUSION

¶ 24   The judgment of the circuit court of Peoria County is affirmed.

¶ 25   Affirmed.